NAVAJO NATION, Plaintiff,

v.

SUPERIOR COURT OF THE STATE OF WASHINGTON FOR YAKIMA COUNTY; Court Commissioner Susan Hahn, Court Commissioner, Yakima County; James W. Norris; Gayle Norris; J. Eric Gustafson, Defendants.

No. CY–98–3001–EFS.

United States District Court, E.D. Washington.

March 31, 1999.

1234

Craig Dorsay, Portland, OR, Elizabeth Nason, for Navajo Nation.

Theresa Pruett, Todd Rosencrans, Seattle, WA, for Gayle Norris, James W. Norris.

Bryan Evenson, Yakima, WA, for Steve Gustafson.

John Staffon, for Superior Court of the State of Washington for Yakima County, Susan Hahn.

## ORDER GRANTING DEFENDANTS NORRIS' PARTIAL JUDGMENT OF THE PLEADINGS; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND GRANTING CONFEDERATED TRIBES AND BANDS OF THE YAKAMA INDIAN NATION'S MOTION TO INTERVENE

SHEA, District Judge.

Before the Court are several motions in which a motions hearing with oral argument was held on September 10, 1998. In a previous scheduling order (Ct.Rec.41), the Court set out a briefing scheduling for partial judgment on the pleadings/partial summary judgment. At the hearing, the following motions were heard: Defendants Norris' Motion for Partial Judgment on the Pleadings (Ct.Rec.37), Defendant Gustafson's Motion for Partial Judgment on the Pleadings (Ct.Rec.42), Plaintiff's Motion for Partial Summary Judgment (Ct. Rec.49), and Plaintiff's Motion to Amend Complaint (Ct.Rec. 61). Craig Dorsay appeared on behalf of the Plaintiff Navajo Nation. The Defendants Norris appeared personally and through their counsel Theresa Pruett and Todd Rosencrans; Defendant Steve Gustafson appeared personally and through his attorney Bryan Evenson; and John Staffon appeared on behalf of the Defendants Superior Court of the State of Washington for Yakima County and Court Commissioner Susan Hahn. Theodora Becenti, natural mother of K.H., and Ted and Alta Strong, natural maternal grandparents of K.H. were also present for the hearing.

On October 6, 1998, the Court heard oral argument on the Confederated Tribes and Bands of the Yakama Indian Nation's Motion to Intervene (Ct.Rec.74). Elizabeth Nason represented the Yakama Nation. The Court enters this Order to supplement the oral rulings of the Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 5, 1998, Plaintiff Navajo Nation filed suit to invalidate a grant of adoption by the Superior Court for Yakima County in violation of the Indian Child Welfare Act ("ICWA"), 25 U S.C. §§ 1901–1915, and Washington state adoption laws. The Navajo Nation asserts six causes of action: (1) Violation of ICWA, 25 U.S.C. § 1911, Exclusive Jurisdiction; (2) Violation of ICWA and U.S. Constitution, Right to Notice; (3) Violation of ICWA, Indian Custodian Status; (4) Violation of ICWA, Invalid Parental Consent; (5) Violation of ICWA, Violation of Placement Preferences; and (6) Violation of Washington Adoption Statutes. The Navajo Nation sued the adoptive parents, James and Gayle Norris, their attorney at the time, Steve Gustafson, the Superior Court of

Yakima County, and the Court Commissioner who entered the decree of adoption, Court Commissioner Susan Hahn.

Theodora and David Becenti, while living on the Yakama Indian Reservation [1] with Theodora Becenti's parents,[2] conceived a child in March, 1990. Theodora concealed her pregnancy from her husband and her parents. She revealed her pregnancy to her husband in November, her eighth month of pregnancy. At that time, the Becentis moved off the Yakama reservation to Yakima, Washington, in part to conceal the pregnancy and in part to attend community college.

While in Yakima, the Becentis contacted Eric Gustafson to arrange for an adoption of their unborn child. The baby, K.H., was born December 7, 1990, at a hospital in Yakima. K.H. is a full-blood Indian—7/32 Yakima Indian, 1/32 Nez Perce, and 3/4 Navajo. A short time after leaving the hospital, the Becentis transferred physical custody of K.H. to the prospective adoptive parents, James and Gayle Norris.

On December 17, 1990, after receiving advice by attorney George Velikanje, the Becentis executed relinquishment documents for K.H. A few days later, the Becentis appeared before Court Commissioner Susan Hahn in the Superior Court for Yakima County where Commissioner Hahn executed a "Certificate of Presiding Judge" for both parents, certifying that both parents appeared before her to acknowledge they had signed the relinquishment documents. The relinquishment documents stated the Indian Child Welfare Act did not apply and that the Becentis desired to keep their Indian heritage anonymous.

Based on the relinquishment documents and other relevant factors, the adoptive parents, their attorney, and the Becenti's attorney, concluded the ICWA did not apply to the adoption of K.H. and the relevant Indian tribes did not need to be notified. Court Commissioner Hahn executed Findings of Fact, Conclusions of Law, Order Authorizing and Approving Relinquishment, Consent and Waiver, and Order Terminating Parent/Child Relationship. In this Order, Hahn found the Becentis moved off reservation two months before K.H.'s birth, the Becentis had Indian heritage but objected to transfer the matter to the Indian Tribal Courts under ICWA, the tribal courts did not have exclusive jurisdiction, and no notice to the tribes was required. No notice was ever given to the Yakama Indian Nation, Navajo Nation, or to the Strongs regarding the termination of the Becentis' parental rights or of the adoption proceedings.

On April 1, 1991, four months after K.H.'s birth, the Becentis moved back to the Yakama Indian Reservation. In July, 1997, Theodora Becenti revealed to her parents the birth and adoption of K.H. The Navajo Nation learned of the adoption in August, 1997. Yakama Indian Nation learned of the adoption in September, 1997.

After learning of the birth and subsequent adoption, the Nation instituted this action to invalidate the adoption. The Navajo Nation seeks declaratory and injunctive relief. Specifically, the Navajo Nation asks the Court to find: K.H. is an Indian child as defined by the ICWA; the ICWA applied to the termination of parental

1. There have been two different spellings throughout the pleadings and briefing of the Indian Nation—"Yakama" and "Yakima". The Court notes the historical name of the tribe is "Confederated Tribes and Bands of the Yakama Indian Nation of the Yakama Reservation, Washington" [Yakama Reservation or Yakama Indian Nation]. See 61 Fed. Reg. 58,211, 58,212 (1996) (listing "Confederated Tribes and Bands of the Yakama Indian Nation of the Yakama Reservation, Washington" as an Indian entity recognized and eligi-

ble to receive services from the U.S. Bureau of Indian Affairs). The spelling "Yakima" has adopted by the municipality.

2. Theodora Becenti is an enrolled member of the Yakama Indian Nation. David Becenti is a full-blood member of the Navajo Nation. Ted Strong, maternal grandfather, is a full-blood Indian and enrolled in the Yakama Indian Nation. Alta Strong, maternal grandmother, is a full-blood enrolled member of the Navajo Nation.

rights and adoption of K.H.; K.H. was domiciled on the Yakama Indian Nation, consequently, the Yakama Indian Nation had exclusive jurisdiction to decide the custody of K.H.; the adoption decree is void and/or invalid and that the voluntary relinquishment, termination, and consents of the Becentis are invalid; the Strongs are Indian custodians as defined by the ICWA and were entitled to notice as such; the placement preferences of the ICWA were violated; the Navajo Nation and the Strongs were entitled to notice, the right to intervene, and participate; and, Washington state adoption statutes were violated making the adoption of K.H. invalid.

Defendants Norris moved for partial judgment on the pleadings and the Plaintiff moved for partial summary judgment. They request the court to dismiss causes of action two through six as a matter of law. Plaintiff Navajo Nation moved the Court for partial summary judgment on issues regarding jurisdiction and 28 U.S.C. § 1360, known as Public Law 280. On September 4, 1998, the Yakama Indian Nation sought to intervene in the matter.

## II. DEFENDANTS NORRIS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Norrises filed a Motion for Partial Judgment on the Pleadings (Ct.Rec.37) to dismiss causes of action two through six. Defendants move for judgment as a matter of law because no notice to the tribe nor to the Strongs were required under ICWA, Plaintiff lacks standing to assert the claims of the Strongs and the Becentis, the statute of limitations creates a bar, and no cause of action exists for violation of placement preferences under section 1915 of the ICWA. Plaintiff opposes the motion.

### A. *Standard for Judgment on the Pleadings*

A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.

See FED.R.CIV.P. 12(c); *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir.1996), *cert. denied*, 520 U.S. 1181, 117 S.Ct. 1460, 137 L.Ed.2d 564 (1997). For purposes of a motion for judgment on the pleadings, all allegations of fact of the opposing party are accepted as true. *See Austad v. United States*, 386 F.2d 147, 149 (9th Cir.1967). Generally, district courts are unwilling to grant a motion to dismiss on the pleadings "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir.1984). As such, the court must determine whether, if the facts were as pleaded, they would entitle Navajo Nation to a remedy. *See Merchants Home Delivery Serv., Inc. v. Hall & Co.*, 50 F.3d 1486, 1488 (9th Cir.1995).

### B. *Discussion*

#### 1. Second Cause of Action: Right to Notice

Plaintiff's second cause of action claims that the Navajo Nation's right to notice of a pending child custody proceeding involving an Indian child pursuant to 25 U.S.C. § 1912(a) was violated. Plaintiff claims the failure of the defendants to give notice violated the ICWA and Fifth Amendment of the U.S. Constitution. Defendants move for dismissal of this cause of action as a matter of law because the ICWA does not provide tribes with a right to notice of private, voluntary adoption proceedings. The Defendants rely on a plain meaning or reading of the statute to show that express mention of notice in one section of the statute excludes further implication of notice in another section of the statute. The Navajo Nation relies on legislative history to show notice is required for any termination of parental rights.

##### a. Notice Not Required by Statute

The rules of statutory construction are clear: When a court is interpreting a statute, it must first look to the

express language of the statute. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). One statutory provision "should not be interpreted in a way that renders the other provisions of the same statute inconsistent or meaningless." *Shields v. United States,* 698 F.2d 987, 989 (9th Cir. 1983). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank,* 503 U.S. at 254, 112 S.Ct. 1146. If the plain meaning is clear and unambiguous, the court must follow "those words, and need not look to legislative history where their meaning is clear on their face." *Id.* If ambiguity exists, the court is then to look to the legislative history. *See Moyle v. Director, Office of Workers' Comp. Programs,* 147 F.3d 1116, 1120 (9th Cir.1998). When "Congress includes a specific term in one section of a statute but omits it in another section of the same Act, it should not be implied where it is excluded." *Arizona Elec. Power Co–op, Inc. v. United States,* 816 F.2d 1366, 1375 (9th Cir.1987).

■ 25 U.S.C. § 1913 dictates the notice requirements required for proceedings involving the voluntary termination of parental rights of an Indian child. There is no language which expressly mandates notice in § 1913. In contrast, 25 U.S.C. § 1912, applicable to involuntary termination of parental rights, expressly requires notice to "the parent of Indian custodian and the Indian child's tribe."

The plain reading of section 1913 requires no notice to the tribe for a voluntary relinquishment of custody. A reading with other statutory sections does not reveal inconsistencies. No ambiguity exists. The ICWA assigns exclusive jurisdiction over an Indian child who resides or is domiciled within the reservation to the tribe. It provides concurrent jurisdiction to both the tribe and state over any Indian child who does not meet the exclusive jurisdiction requirements. *See* 25 U.S.C. § 1911. For all involuntary State proceedings, notice is required to the parent or Indian custodian and to the Indian tribe. *See* 25 U.S.C. § 1912. For all voluntary proceedings, parental consent must be "executed in writing and recorded before a judge of court of competent jurisdiction." 25 U.S.C. § 1913(a).

In addition to the plain language of the statute, the legislative history of the ICWA supports the argument that there is no notice requirement for voluntary adoption proceedings of an Indian child. Congress has yet to include a notice provision for voluntary adoption proceedings. "Currently, the Act requires that tribes receive notice of involuntary proceedings but not voluntary proceedings." H.R.Rep. No. 808, 104th Cong., 2d Sess. 4, 18 (1996); *see, e.g., Amendments to the Indian Child Welfare Act, Hearing before the Committee on Indian Affairs,* 104th Cong., 2d Sess. 343–344 (1996) (recognizing that the National Congress of American Indians proposed a new Section 1913(c) & (d) which would have required tribal notification in voluntary proceedings); H.R.Rep. No. 808, 104th Cong., 2d Sess. 4, 15 (1996) (recognizing the draft amendments would "for the first time" entitle tribes "to receive notice when a voluntary child custody proceedings is underway").

Pursuant to 25 U.S.C. § 1913, no tribal notice is required in voluntary adoption proceedings. It is clear Congress intended to protect Indian tribes by requiring the involuntary taking of Indian children by giving exclusive jurisdiction to the tribes over children on the reservation *and* requiring notice to all involuntary proceedings. No other notice was expressly granted in the ICWA. The legislative history is also clear that no notice is required to tribes for voluntary adoption proceedings.

**b. No Notice Required by Constitution**

■ Although there is an unresolved dispute as to whether the child was domiciled on the Yakama Indian Reservation, it is undisputed that the child was never domiciled on the Navajo Indian Reservation. The court rules hereinafter that the

consents of the parents were valid and the Superior Court of Yakima County observed the ICWA requirements under § 1913. This was a § 1913 voluntary adoption with both parents consenting to the termination of their parental rights and to the adoption itself. Neither § 1913 nor the U.S. Constitution require notice to the Navajo Nation in the circumstances of this case where the adoption was voluntary and the child was not domiciled on the Reservation of the Navajo Nation. There is also no constitutional right to notice to a child's tribe on which the child is not residing or domiciled on the tribe's reservation.

In *Mississippi Band of Choctaw Indians v. Holyfield*, the Supreme Court opined, "this appeal requires us to construe the provisions of the Indian Child Welfare Act that established exclusive tribal jurisdiction over child custody proceedings involving Indian children *domiciled on the tribe's reservation*." 490 U.S. 30, 32, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (emphasis added). In that case it was undisputed that the mother as well as the father had been domiciled on the Choctaw Reservation at all relevant times. *See id.* at 48, 109 S.Ct. 1597. The court then went on to state, "[w]e agree with the Supreme Court of Utah that the law of domicile Congress used in the ICWA cannot be one that permits individual reservation-domicile tribal members to defeat the tribe's exclusive jurisdiction by the simple expedient of giving birth and placing the child for adoption off the reservation." *Id.* at 53, 109 S.Ct. 1597. With the mother having been domiciled on the Choctaw Reservation at all relevant times, the Court held that the newborns took the mother's domicile. *See id.* at 53, 109 S.Ct. 1597. Since the twins were domiciled on the reservation when the adoption proceedings began, the Choctaw Tribal Counsel possessed exclusive jurisdiction pursuant to § 1911(a). *See id.* Accordingly, the state court was without jurisdiction to enter the Decree of Adoption and a § 1914 action to vacate the decree was upheld. *See id.* at 53, 109 S.Ct. 1597. *Holyfield* does not stand for the proposition that the Navajo Nation, on the facts of this case, was entitled to notice of a voluntary adoption pursuant to § 1913. Neither § 1913 nor *Holyfield* required that a notice of this voluntary adoption proceeding be sent to the Navajo Nation. Further, when offered the opportunity to amend § 1913(c) to require notice to tribes even in a voluntary child custody proceeding, Congress declined to do so. *See* H.R.Rep No. 808, 104th Cong., 2d Sess. 4 (1996).

No provision of the ICWA or any relevant case law, including *Holyfield*, gives the Navajo Nation a right to notice in this case, a § 1913 voluntary relinquishment and adoption proceeding. Plaintiff cites to no case holding that in a voluntary adoption proceeding under § 1913, an Indian tribe is entitled to notice of those proceedings. Further, it has cited to no case holding that the failure to give notice of a § 1913 voluntary adoption proceeding to an Indian tribe violates the tribe's Fifth Amendment right to due process of law, nor does Plaintiff cite any case holding that an Indian nation has a protectable interest under the Fifth Amendment which requires that notice be given to that Indian nation. *See Mullins v. Oregon*, 57 F.3d 789 (9th Cir.1995). The Court is not aware of any such precedents. Accordingly, Defendants' motion to dismiss Plaintiff's second cause of action is GRANTED.

## 2. Third Cause of Action: Indian Custodian Status

The third cause of action asserts claims personal to K.H.'s biological grandparents, the Strongs. Plaintiff alleges in its Complaint that "[t]he Strongs are the Indian custodians of [K.H.] under Navajo and Yakama law and tradition" and as such were "entitled to notice under the Fifth Amendment of the United States Constitution and under 25 U.S.C. § 1912(a)." (Ct.Rec.1, ¶¶ 43, 45.) The Norrises argue that the Navajo Nation does not have standing to assert the alleged rights of the birth grandparents, nor would the birth grandparents have been entitled to notice since

they were not "Indian custodians" as defined by ICWA. The Navajo Nation relies on a *parens patriae* theory to support its contention that it has standing to assert claims for its tribal members.

■■■ *Parens patriae* is a doctrine whereby a sovereign, usually a state or federal government, may in appropriate circumstances sue as "parent of the country" to vindicate interests of their citizens. However, the entity purporting to advance the claim must be acting on behalf of the collective interests of all its citizens. *See, e.g., Louisiana v. Texas,* 176 U.S. 1, 19, 20 S.Ct. 251, 44 L.Ed. 347 (1900). Here, the Navajo Nation has no standing to assert the rights of the grandparents, nor do the grandparents have any rights under state or federal law.

### a. Navajo Nation Lacks Standing

■■ When acting solely in a representative capacity, a tribe's standing is based exclusively upon the standing of its individual members: the tribe simply raises claims that its members could raise individually, and essentially stands in the same position as they would had they brought the action collectively. The governmental entity must raise claims which affect all its members, not just a select few. *See Alabama and Coushatta Tribes of Texas v. Trustees of the Big Sandy Indep. School Dist.,* 817 F.Supp. 1319, 1328 (E.D.Tex. 1993) (holding tribes were not suing in its *parens patriae* capacity when they challenged the school district because tribe was not representing interests of all its members in challenging restriction). Nothing in the pleadings and little in the Nation's briefing support the claim the Navajo Nation is acting in its *parens patriae* capacity. The Navajo Nation has failed to prove it is acting on behalf of all of its members in order to litigate as *parens patriae. See Kickapoo Tribe of Oklahoma v. Lujan,* 728 F.Supp. 791, 795 (D.D.C.1990); *Assiniboine & Sioux Tribes v. Montana,* 568 F.Supp. 269, 277 (D.Mont. 1983). Therefore, the Navajo Nation does not have standing to assert claims and rights of the grandparents that are so personal to individual to the Strongs.

### b. The Strongs Have No Protectable Interest to Assert

Neither under state law, federal constitutional law nor the ICWA do the Strongs have any special rights to adopt this child. The Strongs were never "Indian custodians" of K.H. as defined by the ICWA, so they have no rights under the statute.

■■ The ICWA defines "Indian custodian" as "any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, and control has been transferred by the parent of such child." 25 U.S.C. § 1903(6). To be an "Indian custodian" requires that the Strongs have been given legal custody of K.H. or that K.H. would have been in their physical custody.

Physical custody of the K.H. was transferred by the natural parents to the adoptive parents right after birth. The Strongs never had physical custody of the child, in fact, never had physical contact with the child and never had any relationship with the child other than biological. They simply do not qualify as "Indian custodians" as that term is used in the ICWA and therefore have no rights as such. The Strongs never had legal or physical custody of K.H.

■■■ Nor as grandparents do the Strongs have any special independent state law or federal constitutional rights to adopt the child. In *Mullins v. State of Oregon,* a non-Indian case, the court held that grandparents have no substantive due process rights under the 5th Amendment to the U.S. Constitution. 57 F.3d 789. The Court in *Mullins* opined,

What this case is really about is creating a new family unit where none existed before. That is, the asserted interest is one in a potential, still undeveloped familial relationship with prospective adopted children. In every material re-

spect except one, this asserted interest is identical to the interest every prospective adoptive parent has in the child he wishes to adopt, and whatever claim a prospective adoptive parent may have to a child, we are certain that it does not rise to the level of a fundamental liberty interest.

*Id.* at 794. Furthermore, the Washington adoption statutes do not create a protected interest for grandparents. *See* R.C.W. §§ 26.33.010–26.33.901. The Strongs do not have a protected interests which may be asserted.

■ In conclusion, the party claiming a fundamental liberty interest has the burden of establishing it. *See Michael H. v. Gerald D.,* 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). Even if Plaintiff had standing to assert any rights of the Strongs, the Plaintiff has not met that burden of establishing their claim to a fundamental liberty interest. There is no authority supporting the proposition that a grandparent, by virtue of genetic link alone, enjoys a fundamental liberty interest in the adoption of their grandchildren. *See Mullins,* 57 F.3d at 794. For these reasons, Defendants' Motion for Judgment on the Pleadings to dismiss Plaintiff's third cause of action is GRANTED.

### 3. Fourth Cause of Action: Invalid Parental Consent

Similar to the third cause of action, Defendants assert that the Navajo Nation does not have standing to bring claims that are individual to particular tribe members and that any action to invalidate parental consents are time-barred. The Navajo Nation again relies on a *parens patriae* theory to support its contention that it has standing to assert claims for its tribal members. Based on the *parens patriae* standing analysis in the previous section, Navajo Nation lacks standing to assert any rights of the Becentis. Furthermore, the Becentis relinquishments were valid and revocation is statutorily barred.

Plaintiff brings an action on behalf of the birth parents alleging that the birth parents' consents are procedurally invalid under the ICWA, 25 U.S.C. § 1913(a), for three reasons. First, the Yakima County Superior Court had no jurisdiction to enter the decree of adoption or certify or approve the consents of the birth parents because the Yakama Indian Nation had exclusive jurisdiction over the Indian child. Second, the birth parents were insufficiently advised of their right to revoke their voluntary relinquishment of parental rights or consent to adoption by any attorney or the court itself. Third, the execution of these consents by the parents, first in front of their lawyer, and then later in front of the court, did not strictly comply with the requirements of § 1913(a).

Taking the second and third issues together, both the birth mother and the birth father did sign under penalty of perjury documents entitled "VOLUNTARY RELINQUISHMENT; CONSENT TO TERMINATION OF PARENT/CHILD RELATIONSHIP AND ADOPTION; WAIVER OF NOTICE AND APPEARANCE OF BIRTH FATHER." Both signed first in their lawyers office on December 17, 1990, and reaffirmed that signature on December 19, 1990, in front of the court commissioner by adding on those documents the words, "Reaffirm before the Court on December 19, 1990" and then signing their names. The Yakima Superior Court Commissioner then signed a certificate on December 19, 1990, that met the requirements of § 1913(a) as to each birth parent. With the signing of a statement of reaffirmation of those voluntary relinquishments and consents to termination of parent/child relationship in court in front of the Commissioner, the requirements of § 1913(a) were met.

■ Those documents contained information which advised the Becentis about the right to revoke the consent within 48 hours under Washington law and also contained explicit details of both the Washington one-year and ICWA 2–year right to withdraw consent based on fraud or duress. While those documents did not ex-

plicitly state as in § 1913(c) that consent could be withdrawn at any time for any reason prior to the entry of the final decree of termination or adoption on December 19, 1990, the same day the birth parents reaffirmed their consents in court, the Commissioner also entered "FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER AUTHORIZING AND APPROVING RELINQUISHMENT, CONSENT AND WAIVER, AND ORDER TERMINATING PARENT/CHILD RELATIONSHIP." Therefore, the absence of the § 1913(c) language is immaterial.

Under Washington adoption statutes, consent to adoption may be revoked at any time up until the adoption is final. After a final adoption decree, consent may not be revoked, except for fraud, duress, or mental incompetency at the time of signing within a year after finalization. *See* R.C.W. § 26.33.160. After the one year limit, consent may not be revoked for any reason. Washington also has special statutory provisions governing an Indian child. "In the case of an Indian child, consent may be withdrawn for any reason until the entry of a final decree of adoption. Thereafter, consent may be withdrawn for fraud or duress within 2 years of the final decree of adoption." *In the Matter of the Adoption of Infant Boy Crews*, 60 Wash.App. 202, 208, 803 P.2d 24 (1991); *see* R.C.W. § 26.33.160(h). Any revocation of consent by the Becentis is statutorily time-barred.

As to this cause of action, the court GRANTS the motion to dismiss as the requirements of § 1913 were met. The court does so with the understanding that the issue of whether or not the Yakima County Superior Court had jurisdiction to enter the adoption is part of the issue of domicile which has yet to be briefed and argued.

### 4. Fifth Cause of Action: Violation of Placement Preferences

Plaintiff's fifth cause of action is for the violation of the placement preferences for the adoptive placement of an Indian child as set out in 25 U.S.C. § 1915. Defendants move for dismissal of the fifth cause of action because it does not state a cognizable claim. The ICWA does not recognize a cause of action for a violation of 25 U.S.C. § 1915. The Navajo Nation argues that an implied cause of action exits for violation of placement preferences because it is consistent with the purpose of the ICWA.

Section 1914 of the ICWA expressly provides for a private cause of action to invalidate actions of foster care placement or termination of parental rights "upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of [the ICWA]." 25 U.S.C. § 1914. By its terms, § 1914 does not provide for a private cause of action for a violation of § 1915. Section 1915, while setting out the preferences for placement of Indian children, does not expressly permit a private cause of action. Unless the court implies a cause of action, Plaintiff's fifth cause of action does not state a cognizable claim as a matter of law.

Beginning with *Cort v. Ash*, the Supreme Court outlined the factors to be considered in determining whether a statute implies a private cause of action:

(1) Is the plaintiff one of the class for whose "especial benefit" the statute was enacted; that is, does the statute create a federal right in favor of the plaintiff?

(2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

(3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

(4) Is the cause of action one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

Although the four-factor test outlined in *Cort* remains the starting point for determining whether a cause of action is implied in a statute, subsequent Supreme Court decisions state that "[t]he central inquiry

[is] whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Relevant to this inquiry is the language of the statute, its legislative history, and the legislative scheme of which the statute is a part. *See id.* at 571–72, 99 S.Ct. 2479.

Navajo Nation's argument fails based on the third factor for consideration: Whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. It is not consistent with the legislative scheme to create an implied cause of action when an express cause of action already exists in another section of the same statute. *See, e.g., id.* at 572, 99 S.Ct. 2479. When Congress wished to provide a cause of action, it apparently knew how to do so and would have done so in a section of the statute immediately following. Congress knew how to create a cause of action in the statute and did so.

Section 1914 expressly creates a cause of action for violations of §§ 1911–1913. Furthermore, at least two courts have held that a claim is not viable under § 1915. *See B.R.T. v. Executive Dir. of Soc. Serv. Bd. of N.D.,* 391 N.W.2d 594, 601 (N.D. 1986) (showing a violation of § 1915 will not invalidate termination of parental rights); *State ex rel. Juvenile Dept. of Multnomah County v. Woodruff,* 108 Or. App. 352, 816 P.2d 623, 625 (1991) (holding non-compliance with § 1915 placement preferences in not a basis to invalidate termination of parental rights).

Also, in support of its assertion that this Court should find an implied cause of action, Plaintiff cites *Native Village of Venetie v. Alaska,* 944 F.2d 548 (9th Cir.1991). Plaintiff asserts *Native Village of Venetie* recognizes an implied cause of action for a violation of 25 U.S.C. § 1915. *Native Village of Venetie v. Alaska* recognized that the Village had a right under § 1911(d) to full faith and credit of its adoption decrees and could therefore bring an action against Alaska to require it to observe its § 1911

right. That does not give the Plaintiff a cause of action under § 1915 to bring an action to invalidate a § 1913 voluntary adoption action, nor does § 1914 give Plaintiff such a cause of action. Further, *Native Village of Venetie v. Alaska,* did not give Plaintiff such a cause of action. 155 F.3d 1150 (9th Cir.1998). That *Venetie* case simply held that the Village could enforce its § 1911(d) right in a 42 U.S.C. § 1983 action and recover fees under 42 U.S.C. § 1988. While the asserted right in both of those *Venetie* cases was the Village's right to full faith and credit of it adoption decrees, the fundamental right recognized was the right to enter the adoption decrees in the first place. Here, Plaintiff has no right to notice or intervention in a § 1913 voluntary adoption action and therefore, the court declines to find that it has an implied right to bring an action to invalidate a decree of adoption in order to assert whatever rights it has under § 1915.

Based on the fact that an express cause of action exists in § 1914 for violations of §§ 1911–1913, and the fact that courts are reluctant to recognize an implied cause of action, this Court will not recognize an implied cause of action under § 1915. Private rights of action should only be created if there is affirmative evidence that Congress intended to create a private right of action. *See Touche,* 442 U.S. at 576, 99 S.Ct. 2479; *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). Accordingly, as to this cause of action, the court GRANTS the motion to dismiss.

## 5. Sixth Cause of Action: Violation of Washington Adoption Statutes

 Plaintiff's sixth cause of action alleges violation of Washington adoption legislation, including the relinquishments of parental rights signed by the Becentis. Defendants move for dismissal of this cause of action because the Plaintiff is time-barred from asserting any violations of Washington adoption laws.

Under Washington law, "[e]xcept as otherwise provided in RCW 26.33.160(3) and (4)(h), no person may challenge an adoption decree on the grounds of ... (b) the adoption proceedings were in any other manner defective." R.C.W. § 26.33.260(3). The statute does not specifically reference Indian tribes, neither to encompass nor exclude them from the statute of limitations. The statute precludes the Navajo Nation from bringing any state claims because Washington's statute of limitations to challenge adoption procedures has run. Furthermore, the Navajo Nation did not respond or defend its position on this cause of action. Accordingly, as to this cause of action, the court GRANTS the motion to dismiss.

### C. *Conclusion*

Based on the foregoing analysis, Defendants' Motion for Partial Summary Judgment (Ct.Rec.37) is GRANTED as a matter of law. Causes of Action Two, Three, Four, Five, and Six are DISMISSED with prejudice.

### III. YAKAMA NATION'S MOTION TO INTERVENE

Confederated Tribes and Bands of the Yakama Indian Nation filed a Motion to Intervene (Ct.Rec.74) as a named Plaintiff pursuant to FED.R.CIV.P. 24(a) & (b). In the alternative, the Yakama Nation moves the Court for leave to amend its complaint to name the Yakama Nation as a plaintiff. All named Defendants Oppose Intervention on the basis that Yakama Nation has no protectable interest in this case, its motion is untimely, and intervention at this point would add more confusion to an already complex proceeding.

### A. *Standard for Intervention*

Rule 24(a), of the Federal Rules of Civil Procedure, provides for intervention as a matter of right.

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject matter of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Ninth Circuit uses a four part test to determine if a party may intervene as a matter of right: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and, (4) the applicant's interest must be inadequately represented by the parties to the action. *See Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1493 (9th Cir.1995).

Rule 24(b) governs permissive intervention. "Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or face in common." FED. R.CIV.P. 24(b)(2). An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. *See Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 839 (9th Cir.1996). Once the factors have been met, permissive intervention is left to the discretion of the Court. *See Orange County v. Air Cal.*, 799 F.2d 535, 539 (9th Cir.1986) ("Permissive intervention is committed to the broad discretion of the district court.").

### B. *Discussion*

#### 1. Timeliness

Timeliness is a threshold issue for both types of intervention. Three fac-

tors should be considered in determining timeliness of motion for intervention as of right: (1) stage of proceedings, (2) prejudice to existing parties, and (3) length of and reason for delay. *See id.* Defendants argue that Yakama Nation is untimely in its request because it has known for over 10 months that Navajo Nation was going to file suit.

#### a. Stage of Proceedings

This case was filed eight months prior to Yakama Nation's Motion to Intervene. It is in a dispositive motions phase at the initiation of proceedings. Defendants Norris and Gustafson moved for judgment on the pleadings while Plaintiff Navajo Nation moved for partial summary judgment. Defendant Gustafson has been dismissed as a Defendant. Discovery has been conducted, but not finished. No pretrial and trial dates have been set. In light of the stage of the proceedings and status of the case, it appears to be timely.

#### b. Prejudice to existing parties

Allowing the Yakama Nation to intervene would not prejudice the parties in this litigation. In fact, allowing intervention would help facilitate the conclusion of a very complex case wrought with significant personal interests on both sides.

#### c. Length and reason for delay

While allowing intervention may delay the proceedings to accommodate more discovery and another dispositive motions hearing, the delay should not be unreasonably lengthy in light of the fact that discovery has not been completed and a trial date has not yet been set.

#### 2. "Significantly Protectable" Interest

To demonstrate this type of interest, a prospective intervenor must establish that (1) the interest asserted is protectable under some law, and (2) there is a relationship between the legally protected interest and the claims at issue. *See Sierra Club v. U.S. EPA,* 995 F.2d 1478, 1484 (9th Cir.1993). According to the Affidavit and Memorandum submitted on behalf of Yakama Nation's motion, the Nation's protectable interest is that of jurisdiction over adoption proceedings of enrolled members who are domiciled on the reservation pursuant to the ICWA.

The Defendants assert Yakama Nation has no protectable interest under the ICWA because it is not K.H.'s Indian tribe. Defendants assert the ICWA protects the interests of "the Indian child's tribe," which is "(a) the Indian tribe in which an Indian child is a member or eligible for membership or (b), in the case of an Indian child who is a member of more than one tribe, the Indian tribe with which the Indian child has the more significant contacts." 25 U.S.C. § 1903(5). However, 25 U.S.C. § 1911(a) states that "[a]n Indian tribe shall have" exclusive jurisdiction "over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe." If K.H. was domiciled on the Yakama Indian Reservation as alleged in the Amended Complaint, this would give the Yakama Nation a significant protectable interest due to the infringement of its jurisdiction and sovereignty over child custody proceedings.

#### 3. Applicant Must be so Situated that Disposition of Action as a Practical Matter May Impair or Impede its Ability to Protect That Interest

This case is complex in nature, especially regarding the issues of jurisdiction and domicile. At this stage, the jurisdiction asserted by both Plaintiff Navajo Nation and the Yakama Nation are so intertwined that disposition of the matter without Yakama Nation's intervention could foreseeably impair or impede Yakama Nation's ability to protect or assert its interest outside the realm of this case.

#### 4. Applicant's Interest Must Not be Adequately Represented by the Parties to the Action

Yakama Nation states its interests are not, nor will they be, adequately represented by Navajo Nation in these

proceedings. Both Indian Nations are asserting jurisdiction over K.H. Yakama Nation asserts exclusive jurisdiction over its members and children, including those who "attempt to avoid tribal authority for on-reservation issues merely by 'consenting' to state jurisdiction." (*See* Ct.Rec. 75, at 2.) It asserts it is the only party that can adequately argue and protect its inherent interests.

The Court finds Yakama Indian Nation's Motion to Intervene (Ct.Rec. 74) timely, that the Yakama Nation may have a protectable interest if K.H. was domiciled on the Yakama Indian Reservation, that disposition of the case without allowing the Yakama Nation may impair that interest and that its interest is not being adequately represented by the parties. Therefore, Yakama Indian Nation's Motion to Intervene (Ct.Rec. 74) is GRANTED, and it shall be added as a party plaintiff.

## IV. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Navajo Nation filed a Motion for Partial Summary Judgment (Ct.Rec. 49) which seeks judgment on issues regarding jurisdiction and 28 U.S.C. § 1360, known as Public Law 280. After considering the submissions of the parties and oral argument of counsel, the Court finds there are issues of fact precluding a grant of summary judgment at this time. Accordingly, Plaintiff's Motion for Partial Summary Judgment is DENIED with leave to renew or join in with Yakama Indian Nation should it file a similar motion.

## V. CONCLUSION

Based on the analysis contained herein, the Court grants Defendants' Motion for Partial Judgment on the Pleadings as a matter of law. The Court also grants Yakama Nation's Motion to Intervene because it is not untimely and is appropriate at this stage of proceedings. The Court denies Plaintiff's Motion for Partial Summary Judgment finding there are issues of fact which preclude it. Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendants Norris' oral motion to file certified Yakima County Superior Court Adoption records under seal is **GRANTED.** These documents shall remain under seal until further order of the Court.

2. Defendants Norris' Motion for Partial Judgment on the Pleadings (Ct.Rec. 37) is **GRANTED.** Causes of Action Two–Six are **DISMISSED with prejudice.**

3. Plaintiff's Motion for Partial Summary Judgment (Ct.Rec. 49) is **DENIED.**

4. Confederated Tribes and Bands of the Yakama Indian Nation's Motion to Intervene (Ct.Rec. 74) is **GRANTED.** The Yakama Nation shall be added as a party Plaintiff to the above-captioned matter.

5. The parties shall confer and file a Joint Status Certificate and a Rule 26(f) Proposed Discovery Plan on or before **April 27, 1999.** A courtesy copy shall be faxed to Chambers at **(509) 376–0738.**

6. A telephonic Status Conference shall be held at **9:00 a.m.** on **April 30, 1999.** Plaintiff shall initiate the call.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel.