# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1399

_____

United States of America,    *
             *
    Appellant,    *
             *
    v.       *
             *
Santee Sioux Tribe of Nebraska, *
a Federally Recognized Indian  *
Tribe; Arthur "Butch" Denny; Roger *
Trudell; Diane Lapointe; Kenneth * Appeals from the United States
Chapman; Earl Decory; Karen  * District Court for the District
Red Owl; Stuart Redwing; Richard * of Nebraska.
D. Thomas; James White; James  *
Hallum,         *
             *
    Appellees.    *

_____

Nos. 00-1542/00-1764

_____

United States of America,    *
             *
    Appellee/Cross-Appellant, *
             *
    v.       *
             *
Santee Sioux Tribe of Nebraska, *
a Federally Recognized Indian Tribe, *
             *
    Appellant/Cross-Appellee. *

_____

Submitted: January 11, 2001

Filed: June 21, 2001
_____

Before BOWMAN, BEAM and MURPHY, Circuit Judges.
_____

BEAM, Circuit Judge.

These consolidated cases involve our latest journey through this long-existing quagmire created by the parties. We affirm in part and reverse in part.

## I.    BACKGROUND

Pursuant to this court's decision in <u>United States v. Santee Sioux Tribe of Nebraska</u>, 135 F.3d 558 (8th Cir. 1998) (<u>Santee I</u>),[1] the district court issued an injunction against the Santee Sioux Tribe ("the Tribe"), ordering it to close a tribal casino operating class III gaming devices. After the Tribe failed to comply with the injunction, the court held it in contempt and began assessing a fine for every day it continued to operate the casino. On June 25, 1999, and November 12, 1999, the court reduced the fines to judgments totaling $1,182,000. The federal government (hereinafter "government") then initiated garnishment proceedings against tribal bank accounts pursuant to the Federal Debt Collection Procedures Act ("the Act"), 28 U.S.C. §§ 3001-3308. The district court found that twenty-two of the tribal accounts were subject to garnishment. The government also unsuccessfully sought to have the court hold members of the Tribal Council in contempt. The Tribe appeals the district court's

[1]A full account of the underlying facts of this protracted dispute can be found in this prior case.

findings that fifteen of the accounts are subject to garnishment, and the government cross-appeals the court's finding that one of the accounts, the Cedar Hill account, is exempt. The government also appeals the court's refusal to hold individual members of the Tribal Council in contempt.

## II. DISCUSSION

The denial of a contempt order is reviewed for abuse of discretion. Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 504 (8th Cir. 2000). Interpretation of a statute is reviewed de novo. United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000). A district court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. Milligan v. City of Red Oak, 230 F.3d 355, 359 (8th Cir. 2000).

### A. Garnishment of Tribal Accounts

#### 1. The Tribe's Appeal - Case No. 00-1542

The district court issued writs of garnishment against twenty-three tribal accounts utilizing the Act.[2] This legislation was enacted in 1990 to address the need for a uniform procedure to collect over five billion dollars worth of non-tax related civil debts. See Seth S. Katz, Federal Debt Collection Under the Federal Debt Collection Procedures Act: The Preemption of State Real Estate Laws, 46 Emory L. J. 1697,

---

[2]The Act is divided into four principal provisions: subchapter A (§§ 3001-3015) contains definitions and general provisions; subchapter B (§§ 3101-3105) contains the provisions for prejudgment remedies; subchapter C (§§ 3201-3206) contains the provisions for postjudgment remedies; and subchapter D (§§ 3301-3308) contains provisions for fraudulent transfers.

1698-99 (1997). The federal government now enforces all non-tax related civil debts under the Act. Id. at 1699, 1705.

When faced with these court orders, the Tribe claimed some specific exemptions as permitted by the Act and also filed a motion to quash all of the writs. This was done pursuant to 28 U.S.C. § 3202(d), a provision of the Act which contains procedures for evaluating exemptions, quashing postjudgment garnishments and requesting a hearing. After an evidentiary hearing, the court found that twenty-two out of twenty-three of the accounts were lawfully seized, and the Tribe appeals the findings as to fifteen of these twenty-two rulings. The government argues that the district court properly applied a rebuttable presumption that accounts bearing the Tribe's federal tax identification number belonged to the Tribe. We agree with this contention. Not only did the accounts bear the Tribe's federal tax identification number but the individuals who established each account acknowledged the accuracy of such designation and certified under penalty of perjury that this was the proper identification number for the particular account. Accordingly, we find that the district court did not err in applying a presumption of tribal ownership.

Given this rebuttable presumption, the district court applied the burden-shifting analysis set forth in 28 U.S.C. § 3014(b)(2) of the Act. That section states in pertinent part that "[u]nless it is reasonably evident that the exemption applies, the debtor shall bear the burden of persuasion." Id.

The Tribe argues that the district court should have instead applied the general rule of presumptions found in Federal Rule of Evidence 301 because, while it did request a hearing, it did not actually claim an exemption under section 3014.[3] Instead,

---

[3]Rule 301 provides: "In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the

it alleges that the accounts either were not owned or controlled by the Tribe or that it lacked any substantial interest in the accounts. Since section 3014(b)(2) applies only to debtors claiming exemptions, which the Tribe alleges it was not doing, the Tribe contends that the burden of proof in section 3014 does not apply.

We first note that the Tribe did actually claim an exemption with regard to two of the accounts. It claimed the money in one account was held in trust by the United States for the benefit of an Indian tribe or individual Indian. The Tribe claimed the money in a second account was received pursuant to the Mississippi Sioux Judgment Funds Act. Thus, for these two accounts, the burden-shifting analysis in section 3014 clearly applies.

Next we turn to whether the Tribe also bore the burden of proof with regard to the remaining accounts. We find that it did have the burden of proving that it did not have a substantial interest in these deposits.[4]

---

presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast." Obviously the difference is important because under section 3014(b)(2), the burden of persuasion is on the Tribe, while under Rule 301, the Tribe has the burden only of producing evidence in support of its position.

[4]The government may only garnish property in which the debtor has a substantial interest. 28 U.S.C. § 3205(a). Thus, the allegations of no substantial interest by the Tribe are important under the statutory scheme. Section 3202(d) limits the issues that may be raised in a motion to quash. It states, "[t]he issues at such hearing *shall be limited* – (1) to the probable validity of any claim of exemption by the judgment debtor; (2) to compliance with any statutory requirement for the issuance of the postjudgment remedy granted." 28 U.S.C. § 3202(d) (emphasis added). The Tribe apparently bottoms its motion to quash on an interplay between sections 3205(a) and 3202(d)(2).

In general, the law places the burden of proof on the party asserting a contention and seeking to benefit from this contention. Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 428 (2d Cir. 1999). Furthermore, when true facts relating to a disputed issue lie peculiarly within the knowledge of one party, it is fair to assign the burden of proof to that party. ITSI TV Prod., Inc. v. Agricultural Ass'ns, 3 F.3d 1289, 1292 (9th Cir. 1993). Here the Tribe seeks to benefit from the assertion that it does not have a substantial interest in the subject accounts. The Tribe likewise has within its possession the peculiar facts related to its claim. Thus, the burden of proof is properly with the Tribe, especially given the policy established by Congress in section 3014(b)(2).

With this determination made, we turn to the question of whether the Tribe met its burden of proof on the disputed accounts. We agree with the district court that the Tribe clearly failed to do so with regard to the fifteen accounts awarded to the government. To rebut the presumption, the Tribe showed that none of the Tribal Council members were listed as signatories on the accounts. As previously stated, however, the signature cards certified that the accounts bore the correct identification number and that number was the Tribe's tax identification number. Cf. In re Clary, 259 B.R. 453, 455-57 (Bankr. S.D. Ga. 2001) (evidence as a whole established that corporation, and not corporate owner personally, was obligor on debt where contracts and credit applications were signed utilizing corporate federal tax identification number). The fact that the signature cards were signed by non-Council members does not preclude the district court's finding. The Tribe did not submit evidence that Tribal Council members were the only members of the Tribe with authority to open tribal bank accounts and there was no evidence that a Tribal Council member must have signature authority on all tribal accounts.[5] Again, the Tribe bore the burden of

---

[5]The Bylaws of the Santee Sioux Tribe state that the treasurer of the Tribal Council "shall be the custodian of all funds in possession of the tribe from any source .

-6-

presenting such evidence. Thus, each of these accounts bearing the Tribe's federal tax identification number is included in the broad definition of property subject to garnishment under the Act. 28 U.S.C. § 3002(12).

Finally, it is arguable that if the Tribe does not own or have a substantial interest in these accounts, as it contends, it does not have standing to complain about the garnishment of the accounts. See Warth v. Seldin, 422 U.S. 490, 499 (1975) ("plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); cf. United States v. 1998 BMW "I" Convertible, 235 F.3d 397, 399 (8th Cir. 2000) (in forfeiture context claimant must first show an ownership interest in the property); United States v. $515,060.42 in United States Currency, 152 F.3d 491, 497 (6th Cir. 1998) (in governmental forfeiture contest claimant must have colorable ownership, possessory, or security interest in property to have Article III standing).

At oral argument the Tribe asserted that the Tribe, even without a substantial interest, has standing to protect the Constitutional rights of tribal members who were signatories to the accounts. Assuming the Tribe is attempting (for the first time at oral argument) to assert parens patriae standing, this argument fails. The doctrine of parens patriae allows a sovereign to bring an action on behalf of the interest of all of its citizens. Louisiana v. Texas, 176 U.S. 1, 19 (1900). However, this doctrine is reserved for actions which are asserted on behalf of *all* of the sovereign's citizens. See United States v. Hooker Chemicals & Plastics Corp., 749 F.2d 968, 984-85 (2d Cir. 1984). The parens patriae doctrine cannot be used to confer standing on the Tribe to assert the rights of a dozen or so members of the Tribe. See, e.g., Navajo Nation v. Superior Court of State of Wash. for Yakima County, 47 F. Supp. 2d 1233, 1240 (E.D.

---

. . . He shall keep an accurate record of all such funds and shall disburse the same in accordance with the vote of the tribal council . . . ." This provision does not alter our conclusion. That the treasurer is the official "custodian" of tribal funds does not preclude other members of the Tribe from being signatories on tribal bank accounts.

Wash. 1999) (Tribe lacked standing under the doctrine of parens patriae to assert rights of biological grandparents in action challenging adoption of grandchild because claims were personal to grandparents and not those of Tribe as a whole); Kickapoo Traditional Tribe of Texas v. Chacon, 46 F. Supp. 2d 644, 652 (W.D. Tex. 1999) (Tribe did not have standing to assert a first amendment violation because the rights sought to be asserted were primarily those of a small group of Tribe members and not those of the Tribe as a whole).

In any event, the Tribe either did not meet its burden of proof on the accounts, as the district court found, or did not have standing to object to the garnishment of accounts in which it did not have substantial interest. We thus affirm the district court in the Tribe's appeal.

## 2. The Government's Cross-Appeal - Case No. 00-1764

The government cross-appeals the district court's finding that the Tribe met its burden of proving that it did not have a substantial interest in the funds in the Cedar Hill account because they are held in escrow. In coming to this conclusion, the district court relied on a purchase agreement submitted by the Tribe, which showed that the Cedar Hill account contained earnest money for land the Tribe was attempting to purchase. The purchase agreement provided that the funds would be held in the account until the time of closing or transfer to an escrow account, and also provided that either the seller or buyer could cancel the agreement any time after June 1, 2000. Upon termination of the agreement, all earnest money deposits and interest would be returned to the buyer.

We find the district court's quashal of the writ of garnishment for this account should be reversed. First, even if the purchase agreement had the effect of divesting the Tribe of an interest in the funds, the Tribe had the option of terminating the contract and reclaiming the funds as of June 1, 2000. If the Tribe did not have a substantial

interest in the funds at the time of the hearing, it does now. Also, under the Act, even if the account was an escrow account, the account was garnishable. The Act defines "property" as:

> [A]ny present or future interest, whether legal or equitable, in real, personal . . . or mixed property, tangible or intangible, vested or contingent, wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts)) .

28 U.S.C. § 3002(12).

Under Nebraska law, legal title remains in the grantor when funds are placed in escrow. Cf. Mackiewicz v. J.J. & Assocs., 514 N.W.2d 613, 619-20 (Neb. 1994). See also Knoll v. Butler, 675 A.2d 1308, 1312 (Pa. Commw. Ct. 1996) ("An ordinary escrow agreement creates a fiduciary relationship between the agent and the transferor. The depositor is usually the buyer who, nevertheless, retains title to the escrowed money until the performance of certain conditions or happenings of specific events (the escrow conditions).") Thus, if the funds were in escrow, the Tribe had legal title to the funds and they were subject to garnishment. The Tribe also had a future interest in the funds at the time of the hearing because after June 1, 2000, the Tribe could cancel the agreement and reclaim the funds. Therefore, we find the Cedar Hill account was subject to garnishment.

## B. Contempt of Individual Tribal Council Members - Case No. 00-1399

The Council members argue that this court has no jurisdiction over this appeal because even though labeled a "civil contempt" proceeding, the punitive nature of the proposed fines rendered the underlying action criminal in nature, and the district court's refusal to impose sanctions constitutes an unappealable acquittal of criminal contempt. We disagree.

The council members cite International Union, United Mine Workers v. Bagwell, 512 U.S. 821 (1994), as support for the proposition that the contempt proceedings labeled "civil" in district court were really criminal in nature. Bagwell involved a labor union's failure to comply with a complex state court order that prohibited the union from engaging in several different kinds of specific conduct, including obstructing ingress and egress to company facilities, threatening company employees, sabotaging roads leading to company facilities, and picketing with excessive numbers of people at designated sites. The state court had set up a prospective schedule of fines, and required payments to the Commonwealth of Virginia only if it were shown the union disobeyed the court's orders. The union was eventually fined in excess of $50 million for the violations. The issue on appeal before the Supreme Court was whether the contempt proceedings, labeled civil, were actually criminal due to the nature of the penalties, thus entitling the union the procedural protections of a criminal trial, including a right to trial by jury.

The Supreme Court held that because the fines were punitive, rather than coercive or compensatory, the proceeding was actually criminal in nature. Id. at 834, 837. In reaching its decision, the Court reasoned that the fines were not compensatory because there was no evidence concerning the losses sustained by the non-party governments (the injured party was actually the private company, not the government), nor did the trial court attempt to calibrate the fines in accordance with damage caused by the union's contumacious activity. Id. at 834.

The Court further found that the need for extensive fact-finding to determine whether an extremely specific and complex injunction had been violated made it necessary to have impartial fact-finding subject to criminal procedures to protect the due process rights of the alleged contemnor. Id. at 833-34. Without a neutral fact-finder, the trial court was in the position of policing the union's "compliance with an entire code of conduct that the court itself had imposed." Id. at 837.

-10-

Here, unlike Bagwell, the injunction is not complex, negating the need for extensive and impartial fact-finding. The injunction simply requires that the Tribe cease class III gaming. Further, the fines are compensatory because here the government is actually the aggrieved party. Thus, the action in district court was a civil contempt action, and we have jurisdiction to hear the government's appeal.

Once it has been shown that the alleged contemnors violated a court order, the contemnor bears the burden of showing that compliance is presently impossible. Chicago Truck Drivers, 207 F.3d at 505. To show that compliance is presently impossible, the defendant must demonstrate: "(1) that they were unable to comply, explaining why categorically and in detail, (2) that their inability to comply was not self-induced, and (3) that they made in good faith all reasonable efforts to comply." Id. at 506 (internal quotes and citations omitted).

In this case, the district court held that it could not hold the Council members in civil contempt because to do so would not result in the cessation of class III gaming due to a tribal referendum. The district court held that the Council members would be unable to comply with the court order because the referendum vote precluded the Council from shutting down the class III gaming activities.

Because the tribal referendum lacks legal effect, we conclude that the Tribal Council members cannot establish they were unable to comply. Cf. Missouri v. Jenkins, 495 U.S. 33, 57-58 (1990) (holding that state legislature cannot hinder a federal law from being implemented by passing a law that prohibits its implementation). The Council members cannot hide behind a spurious tribal referendum because the Tribe cannot pass such a referendum in contravention of federal law, including the lawful orders of a federal court. This court decided in Santee I that the operation of the casino violated the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721. 135 F.3d at 565. We thus ordered the district court to enjoin the Tribe's operation of class III gaming devices. Id. at 566. The Tribe, through the purported referendum process, has

disregarded federal law and orders of the district court and this court. The Tribe is required to comply with the same rules that bind other political subdivisions in the United States, and thus cannot flagrantly disregard federal law. Cf. Florida Paraplegic Ass'n v. Miccosukee Tribe of Indians of Florida, 166 F.3d 1126, 1135 (11th Cir. 1999) ("The federal government is responsible for harmonizing the competing interests of allowing Indian tribes, sovereign yet subordinate dependent nations, to maintain their independence but, at the same time, requiring tribes to comply with the same rules that bind all other political subdivisions of the United States."). The Tribe's noncompliance with federal law cannot serve as justification for the Council's inability to comply with the court order. Thus, as a matter of law, the Council members cannot make the requisite showing that compliance is presently impossible. Chicago Truck Drivers, 207 F.3d at 505, 506.

Furthermore, the record shows that one day after the district court ordered the Tribe to cease class III gaming, and prior to the referendum vote of the entire Tribe, the Tribal Council convened a special meeting. The minutes of this meeting disclose that the Council was made aware of the federal court order to cease class III gaming and shut down the Ohiya Casino, yet the Council voted to deny closure. Thus, while the Council members attempt to cloak their actions with the cape of the tribal referendum, the record shows the Council had no intention of complying with the court order regardless of the referendum. Accordingly, we find the members of the Tribal Council in contempt of the district court orders directly affecting them.

Finally, Chairman Denny separately argues that he cannot be held in contempt because he has no vote in the Council except in the case of a tie. While this case was pending, Mr. Denny filed a motion to substitute parties because he is no longer Chairman or even a member of the Tribal Council. Since we have determined that this is a civil and not criminal contempt proceeding, and Council members can purge themselves of contempt by complying with the order, we grant Mr. Denny's motion to substitute Roger Trudell as Tribal Chairman and to dismiss Mr. Denny as a party to this

action. Mr. Denny is no longer a member of the Tribal Council and therefore is no longer able to purge himself of the contempt. Any actions Mr. Denny has taken in the past which would have subjected him to a finding of contempt of court are no longer relevant. See In re Kave, 760 F.2d 343, 351 (1st Cir. 1985) (in contrast to criminal contempt, civil contempt is imposed to coerce present or future compliance with order of the court).

III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed in case no. 00-1542 – the Tribe's appeal regarding the garnishment of accounts; reversed in case no. 00-1764 – the government's cross-appeal regarding the Cedar Hill account; and reversed in case no. 00-1399 – the government's appeal concerning the individual liability of Tribal Council members. These cases are remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.