OPINION
 

 By the Court,
 

 Becker, J. :
 

 In this case, we consider issues involving the adoption of Native American children under the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-63. Specifically, we address the type of evidence that may be used to determine whether a child is a Native American child under the ICWA and whether a Native American tribe has independent standing under the Act to challenge the voluntary adoption of a Native American child.
 

 We conclude that a tribal enrollment officer’s affidavit may be used to establish that a child is a Native American child and subject to the ICWA and that a Native American tribe has independent standing under the ICWA to challenge the voluntary adoption of a Native American child.
 

 However, because the adoptive parent in this case was not given an opportunity to rebut the enrollment officer’s affidavit, we reverse the district court’s order vacating the adoption and remand the matter to the district court to permit the adoptive parent to
 
 *1287
 
 present evidence to rebut the enrollment officer’s statements regarding the child’s tribal status under the ICWA.
 

 FACTS AND PROCEDURAL HISTORY
 

 After holding an adoption hearing, the district court granted appellant Phillip A. C. II’s petition to adopt then two-year-old Z.R.K., the child of Phillip’s ex-stepdaughter, respondent Tarah K. Phillip is not related to either Z.R.K. or Tarah by blood; rather, he was formerly married to Tarah’s mother.
 
 [1]
 
 Two written consents to the termination of parental rights and adoption supported Phillip’s petition: one signed by Tarah and another signed by Z.R.K.’s father. Tarah did not appear at the adoption hearing.
 

 Soon after the district court granted the order of adoption, Tarah contacted the Central Council of the Tlingit & Haida Indian Tribes of Alaska (Council), seeking assistance in overturning the adoption. Tarah claimed that she had signed the adoption consent under extreme duress and that Phillip had prevented her from attending the subsequent adoption hearing through deception. The parties agree that ethnically, Tarah is 7/16ths Native American and Z.R.K. is 7/32nds Native American. They disagree, however, as to whether Z.R.K. is a Native American child under the ICWA.
 

 Respondent Council filed a motion in the district court to intervene and invalidate Z.R.K.’s adoption, alleging violations of the ICWA. The Council also requested a hearing before the district court on the matter. Tarah attended the hearing and filed her own petition to vacate the adoption, which was assigned the same district court case number as the Council’s motion. Nevada Legal Services represented both the Council and Tarah at the hearing.
 

 Without formally ruling on the Council’s motion to intervene,
 
 [2]
 
 the district court concluded that the adoption proceeding had failed to comply with a provision of the ICWA, 25 U.S.C. § 1913(a), which requires that the judge certify that the parents’ written consents were fully explained and understood by them. Under § 1913(a), a voluntary consent to termination of parental rights will only be valid when executed in writing and recorded before a judge of a court of competent jurisdiction, and accompanied by the presiding judge’s certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent or Native American custodian. Because the consents were not properly certified in this case, the district court conditionally vacated Z.R.K.’s adoption pending proof that Z.R.K. was a Native American child and therefore subject to the ICWA.
 

 
 *1288
 
 Subsequently, Nevada Legal Services submitted a number of documents from the Council that purported to show that Tarah was a member of a Native American tribe and that Z.R.K. was eligible for membership. Phillip objected to these documents because they allegedly did not conform to the rules of evidence.
 

 In the interim, an unspecified single “petitioner” filed a “Notice of Judgment [of voluntary] Dismissal” under NRCP 41(a).
 
 [3]
 
 Significantly, the voluntary dismissal did not specify whether Tarah or the Council had filed it. An attorney from Nevada Legal Services signed the notice. Without specifically resolving the ambiguous voluntary dismissal, the district court entered an order in which it concluded that the documents offered by the Council relating to Tarah’s and Z.R.K.’s tribal memberships did not meet the affidavit requirements of NRCP 56(e).
 
 [4]
 
 However, the court provided the Council with an additional thirty days to submit proper affidavits and declared that Z.R.K.’s adoption would be invalidated once they were filed.
 

 Consequently, the Council submitted the affidavit of its tribal enrollment officer, Valerie M. Hillman. In her affidavit, Ms. Hill-man averred that (1) she had served as the tribal enrollment officer for fifteen years, (2) Tarah had been an enrolled member of the Tlingit & Haida Indian Tribes since 1989, (3) Z.R.K. was eligible for enrollment at the time of her adoption by Phillip on June 8, 2004, and (4) Z.R.K. had been an enrolled member of the tribes since February 16, 2005.
 

 Shortly thereafter, the district court entered an order that vacated the adoption. In its order, the district court found that Z.R.K. was a Native American child to whom the ICWA applied and that the adoption proceedings had violated part of the ICWA, 25 U.S.C. § 1913(a), because no judicial certification had been entered. Phillip now appeals.
 

 DISCUSSION
 

 Phillip challenges three legal aspects of the proceedings below: (1) the district court’s jurisdiction to consider the action after the filing of the voluntary dismissal, (2) the evidentiary foundation for Z.R.K.’s status as a Native American child, and (3) the Council’s standing to intervene. We conclude that (1) the voluntary dismissal, if effective at all, only applied to Tarah’s petition; (2) Ms.
 
 *1289
 
 Hillman’s affidavit was admissible to establish Z.R.K.’s status under the ICWA; and (3) the Council has standing to intervene and contest the validity of the adoption.
 

 Phillip also contends that he was denied the opportunity to contest Ms. Hillman’s authority to issue the affidavit and he should be given a chance to demonstrate that Ms. Hillman lacked authority to attest to Tarah’s and Z.R.K.’s tribal status. We agree and therefore reverse the order vacating the adoption and remand this matter to the district court so that Phillip may present any evidence regarding Ms. Hillman’s authority before the district court issues a final ruling on the validity of the adoption.
 

 The district court did not lack jurisdiction to consider the Native American tribe’s motion to intervene and invalidate the adoption
 

 Phillip argues that the district court lacked jurisdiction to vacate his adoption of Z.R.K. because, purportedly, both the Council and Tarah voluntarily dismissed their actions by filing a single voluntary dismissal under NRCP 41(a).
 

 The Council acknowledges that Tarah voluntarily dismissed her petition but insists that it never dismissed its own motion to intervene. The Council claims that Tarah chose not to proceed because her petition had not been served, no responsive pleading had been filed, and the Council’s petition would achieve the same ends.
 

 NRCP 41(a)(l)(i) states that a plaintiff may dismiss an action upon repayment of the defendant’s filing fees, without an order of the court, “by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs.”
 

 We conclude that the district court had jurisdiction to consider the Council’s motion and that the Council was properly allowed to intervene because substantial evidence supports the district court’s inferred finding that the ambiguous voluntary dismissal only applied to Tarah and not to the Council. We base our conclusion on two reasons.
 

 First, the voluntary dismissal refers to a single “petitioner,” not multiple “petitioners.” Thus, in contrast to Phillip’s position, the voluntary dismissal, by its own terms, only applies to one party, not two. Because the voluntary dismissal refers to a single “petitioner” and both parties agree that it applied to Tarah, Tarah was ostensibly the one and only “petitioner.” We also note that Tarah filed a “petition,” whereas the Council filed a “motion,” which further suggests that Tarah was the dismissing petitioner.
 

 Second, the Council’s actions, both before and after the voluntary dismissal was filed, are totally inconsistent with such a filing.
 
 *1290
 
 Before and after the voluntary dismissal was filed, the Council vigorously pursued its motion to intervene, actions inconsistent with a decision to voluntarily dismiss the motion.
 

 The district court’s decision to vacate the adoption indicates that it did not find that the voluntary dismissal applied to both petitioners. Based upon the above reasoning, we conclude that substantial evidence supports the inference that the voluntary dismissal applied only to Tarah and the district court did not abuse its discretion to permit the Council’s intervention.
 
 [5]
 

 Finally, as an independent ground for our conclusion that the voluntary dismissal did not affect the district court’s jurisdiction over this case, we note that the voluntary dismissal was ineffectual as to
 
 both
 
 Tarah and the Council because it was filed at an advanced stage of the proceedings. We have recognized that “federal decisions involving the Federal Rules of Civil Procedure provide persuasive authority when this court examines its rules.”
 
 [6]
 
 NRCP 41(a) is substantially similar to its federal counterpart, and the essential purpose of its federal counterpart is to prevent arbitrary dismissals after extensive proceedings.
 
 [7]
 

 In
 
 Harvey Aluminum
 
 v.
 
 American Cyanamid Co.,
 
 the United States Court of Appeals for the Second Circuit held that, under FRCP 41(a)(1), the plaintiff no longer possessed the right to dismiss an action by notice before the defendant had answered because there had been an extensive hearing, lasting several days and resulting in a sizable record, in which the merits of the controversy were squarely raised.
 
 [8]
 
 The court noted that although the voluntary dismissal had technically been attempted before any paper labeled “answer” or “motion for summary judgment” was filed, a literal application of the rule to the controversy would not have accorded with its essential purpose.
 
 [9]
 

 We conclude that the
 
 Harvey Aluminum
 
 facts are analogous and its reasoning persuasive. Here, the voluntary dismissal was filed three months after the district court had already held a hearing on the Council’s motion to intervene and to invalidate the adoption. At
 
 *1291
 
 the hearing, the merits of the Council’s motion were raised by the parties and addressed and decided by the district court. The district court concluded that the adoption proceeding did not comply with § 1913(a) and conditionally vacated the adoption. Since the proceedings had reached an advanced stage, and a decision had already been made, a literal application of NRCP 41(a)(1) in this case would not accord with its essential purpose. Thus, we conclude that the voluntary dismissal was ineffectual as to both Tarah and the Council. We now turn to Phillip’s contention that the Council failed to establish that Z.R.K. was a Native American child under the ICWA.
 

 Sufficiency of the tribal enrollment officer’s affidavit to establish that Z.R.K. is a Native American child and subject to the ICWA
 

 For the ICWA to apply, the child at issue must be a Native American child.
 
 [10]
 
 A Native American child is any unmarried person who is under eighteen and is either (a) a member of a Native American tribe, or (b) eligible for membership in a Native American tribe and the biological child of a Native American tribe member.
 
 [11]
 

 Whether a person is a member of a Native American tribe for ICWA purposes is for the tribe itself to answer:
 
 [12]
 
 a Native American “tribe’s determination of membership or membership eligibility is conclusive and final.”
 
 [13]
 
 “Thus, a[ ] [Native American] tribe’s determination that a child is a member or eligible for membership in that tribe is conclusive evidence that a child is a[ ] ‘[Native American] child’ within the meaning of the [ICWA].”
 
 [14]
 
 An appellate court may not second-guess the internal decision-making processes of the tribe in regard to its membership determination.
 
 [15]
 

 
 *1292
 
 Whether a tribe has concluded that a child is eligible for membership in a Native American tribe is a question of fact.
 
 [16]
 
 The court’s focus is on “whether the party who states that the child is a member or eligible for membership in a tribe is authorized to make such statements on the tribe’s behalf.”
 
 [17]
 
 The testimony of a tribal government representative is probative evidence of membership.
 
 [18]
 

 Phillip argues that the district court erred when it used incompetent evidence to determine that Z.R.K. was a Native American child subject to the ICWA. Specifically, Phillip argues that the affidavit in which Ms. Hillman, the Council’s tribal enrollment officer, averred to Z.R.K.’s eligibility for tribal membership and, correspondingly, her status as a Native American child, violated the affidavit requirements under NRCP 56(e). NRCP 56(e) states, in relevant part, that “[supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affi-ant is competent to testify to the matters stated therein.”
 

 Here, Ms. Hillman signed an affidavit on behalf of the Council. In the affidavit, she stated that she was the tribal enrollment officer for the Council and had served in that position for 15 years. Ms. Hillman then went on to aver that (1) Tarah had been an enrolled member of the Tlingit & Haida Indian Tribes of Alaska since September 27, 1989; (2) Z.R.K. was eligible for enrollment in the tribes on the date of the adoption, June 8, 2004; and (3) Z.R.K. had been an enrolled member of the tribes since February 16, 2005. Ms. Hillman’s status as the Council’s tribal enrollment officer implies that she is authorized to determine tribal membership eligibility. As a result, we conclude that her affidavit is admissible to establish that Z.R.K. is a Native American child and subject to the ICWA. We now address whether, once a child is subject to the ICWA, a Native American tribe has independent standing to challenge voluntary adoption proceedings.
 

 A Native American tribe has standing under the ICWA to challenge the voluntary adoption proceeding of a Native American child apart from the child’s parent
 

 Phillip argues that, even if Z.R.K. is a Native American child under the ICWA, the Council lacked independent standing to contest the adoption. Phillip contends alternatively that a tribe must
 
 *1293
 
 join with a parent or guardian when it wishes to contest a termination of parental rights/adoption or that, because the ICWA does not grant a Native American tribe any independent substantive rights in an adoption proceeding, including the right to notice of a voluntary adoption, it does not have standing to contest an adoption. Rather, Phillip contends that all of the substantive rights contained in the ICWA belong to the parents, and that a tribe’s rights are contingent upon, and extend only as far as, the parents’ rights.
 

 Because the parents in this case voluntarily relinquished their rights when they consented to the adoption, Phillip argues that any rights the Council possessed evaporated, so that the Council lacked independent standing to contest the adoption. We are not persuaded by Phillip’s argument because it ignores portions of the ICWA and assumes that the parental consents here were valid when the district court found that they were not.
 

 The district court’s findings of fact will not be disturbed on appeal if they are supported by substantial evidence.
 
 [19]
 
 The district court’s conclusions of law are reviewed de novo.
 
 [20]
 
 The construction of a statute is a question of law, which this court also reviews de novo.
 
 [21]
 
 When interpreting a statute, words should be given their plain meaning unless it would violate the spirit of the act.
 
 [22]
 
 When a statute’s language is clear and unambiguous, there is no room for construction and the apparent intent must be given effect.
 
 [23]
 
 Statutory interpretation should avoid meaningless or unreasonable results.
 
 [24]
 
 “When construing a specific portion of a statute, the statute should be read as a whole, and, where possible, the statute should be read to give meaning to all of its parts.’ ’
 
 [25]
 
 Statutes with a protective purpose should be liberally construed in order to effectuate the intended benefits.
 
 [26]
 

 One part of the ICWA specifically states, “In any State court proceeding for the foster care placement of, or termination of parental rights to, a[ ] [Native American] child, the [Native Amer
 
 *1294
 
 ican] custodian of the child and the [Native American] child’s tribe shall have a right to intervene at any point in the proceeding.”
 
 [27]
 
 The adoption proceeding here is a state court proceeding. Another part of the ICWA defines “termination of parental rights” as “any action resulting in the termination of the parent-child relationship.”
 
 [28]
 
 An adoption proceeding qualifies as such an action because an adoption effectively terminates a parent-child relationship.
 
 [29]
 
 Finally, Tarah’s consent to adoption included a termination of parental rights: “I . . . hereby surrender, relinquish and terminate all of my parental rights, duties or obligations toward my minor child ...” Thus, we conclude that the Council had standing to challenge the state court adoption proceeding under the ICWA.
 

 In addition, § 1914 of the ICWA also provides the Council with standing to challenge the voluntary adoption proceeding. This section authorizes a Native American child’s tribe to petition a court to invalidate a termination of parental rights:
 

 Any [Native American] child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or [Native American] custodian from whose custody such child was removed, and
 
 the [Native American] child’s tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections
 
 1911, 1912, and
 
 1913
 
 of this title.
 
 [30]
 

 The plain meaning of the statute appears to convey standing upon a tribe to invalidate an order placing a Native American child into foster care or terminating parental rights if the order violates the ICWA. However, an argument could be made that, by using the conjunctive “and” the statute requires both the parent/custodian and the tribe to file a petition, rather than granting each entity a separate right to invalidate such actions. Even if the statute is therefore said to be ambiguous, legislative intent reveals that a tribe has independent standing to contest actions terminating parental rights involving Native American children.
 

 This issue was addressed by the Michigan Court of Appeals in
 
 Matter of Kreft,
 
 where the petitioner asserted that the respondent lacked standing to challenge alleged violations of the ICWA because the respondent’s tribe had not joined in the appeal.
 
 [31]
 
 Al
 
 *1295
 
 though
 
 Kreft’s
 
 facts are the mirror image of the case at hand
 
 (i.e.,
 
 parent petitioning without the tribe instead of the tribe participating without the parents in this case), we conclude that
 
 Kreft’s
 
 holding is still equally applicable: any one of the listed parties— Native American child, parent/custodian, or tribe — may petition without the others.
 

 In
 
 Kreft,
 
 the court stated its belief that Congress intended for § 1914 to mean that each of the parties listed could challenge the validity of an order independently.
 
 [32]
 
 The court based this belief on the ICWA’s policy rationale, for which the court cited 25 U.S.C. § 1902:
 
 [33]
 

 [I]t is the policy of this Nation to protect the best interests of [Native American] children and to promote the stability and security of [Native American] tribes and families by the establishment of minimum Federal standards for the removal of [Native American] children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of [Native American] culture ....
 

 Thus, concern for three entities rests at the core of the ICWA: Native American children, Native American families, and Native American tribes. Like the
 
 Kreft
 
 court, we conclude that these entities each have independent standing under § 1914 to challenge a violation of 25 U.S.C. §§ 1911, 1912, and 1913.
 

 Because the Council was alleging a violation of 25 U.S.C. § 1913(a), it had standing to intervene and petition to invalidate the district court order.
 

 Phillip contends that even if the above statutes permit a tribe to intervene or petition without joining the parent or custodian, the statutes do not apply to adoption proceedings. Phillip acknowledges that the effect of an adoption is to terminate parental rights, but he argues that since a tribe is not entitled to notice of adoption proceedings, adoption actions should not be considered the equivalent of a termination of parental rights for purposes of the ICWA.
 

 Phillip’s argument on appeal relies heavily on the federal district court case of
 
 Navajo Nation
 
 v.
 
 Superior Court of the State of
 
 Washington,
 
 [34]
 
 However, that case is legally inapposite as well as factually distinguishable. In
 
 Navajo Nation,
 
 a Native American couple conceived a child, which they voluntarily relinquished for adoption in a state court proceeding.
 
 [35]
 
 When the father’s tribe, the Navajo Nation, learned of the birth and adoption seven years after the fact, the tribe instituted an action in federal court to invalidate
 
 *1296
 
 the adoption.
 
 [36]
 
 The tribe asserted two claims that Phillip contends are relevant to the case at hand: (1) the tribe claimed that it was entitled to notice of the adoption under the ICWA; and (2) the tribe claimed that the ICWA, specifically § 1913(a), had been violated because the parental consents were invalid.
 
 [37]
 

 Regarding the first claim, the court in
 
 Navajo Nation
 
 determined that the plain meaning and legislative history of § 1913 indicated that a tribe was not entitled to notice of a voluntary adoption proceeding.
 
 [38]
 
 From this holding, Phillip argues that a voluntary adoption should not be treated as a termination of parental rights because if a tribe is not entitled to notice of an adoption, Congress did not intend a tribe to be able to contest an adoption. Thus, Phillip contends that treating an adoption as a termination of parental rights under 25 U.S.C. §§ 1911(c) and 1914 would undermine the ICWA adoption provisions.
 

 Phillip also relies upon
 
 Navajo Nation
 
 for the proposition that only the natural parents of a Native American child may bring a claim to invalidate their consent to adoption and that actions to revoke consents may be time barred under state law.
 
 [39]
 

 In
 
 Navajo Nation,
 
 the tribe never asserted individual standing. Rather the tribe relied on a
 
 parens patriae
 
 theory to support its contention that it had standing to assert claims for its tribal members.
 
 [40]
 
 The court in
 
 Navajo Nation
 
 concluded that (1) the tribe lacked standing to assert the rights of the parents because, contrary to its own claim, it was not acting in its
 
 parens patriae
 
 capacity; (2) the consents were valid; and (3) any revocation of consent by the parents was time-barred under state law.
 
 [41]
 

 Navajo Nation
 
 is distinguishable on each of these three bases. First, unlike the Navajo Nation, the Council never claimed to rely on a
 
 parens patriae
 
 theory for standing in this case. Rather, it relied upon § 1914, which the
 
 Navajo Nation
 
 court only analyzed in the context of a claim irrelevant to the case at hand.
 
 [42]
 
 As we have already concluded, § 1914 provides the tribe with standing to contest the validity of Tarah’s consent under § 1913(a). Second, unlike the situation in
 
 Navajo Nation,
 
 the district court here found the consents invalid because they violated § 1913(a), which pro
 
 *1297
 
 vides the tribe with independent standing under § 1914. Finally, the length of time that has passed since the adoption proceeding is not at issue here. In
 
 Navajo Nation,
 
 the time gap between the adoption and the tribe’s attempted intervention amounted to approximately seven years,
 
 [43]
 
 whereas the gap here is negligible. In this case, the Council sought intervention the month after the district court entered its order of adoption. There was no time bar to the Council’s action; the Council’s contest in this case was timely.
 
 [44]
 

 Because 25 U.S.C. §§ 1911 and 1914 apply and
 
 Navajo Nation
 
 is distinguishable, we conclude that the Council had independent standing to contest the validity of parental consent to the voluntary adoption under § 1913(a). We now address Phillip’s final contention that he should have had a chance to challenge Ms. Hill-man’s affidavit.
 

 The district court erred by not providing Phillip an opportunity to rebut the Hillman affidavit
 

 The district court entered its order vacating the adoption without providing Phillip an opportunity to contest whether Ms. Hillman had the authority to speak for the Council. We appreciate that the district court was trying to accommodate the needs of the parties and reduce litigation expenses; however, Phillip should have been afforded the opportunity to submit evidence challenging Ms. Hill-man’s authority to attest to Tarah’s and Z.R.K.’s status with the tribe. Therefore, although the affidavit is admissible to establish that Z.R.K. was a Native American child subject to the ICWA, we reverse the district court’s order and remand the matter to allow Phillip an opportunity to present any rebuttal evidence regarding the tribal enrollment officer’s authority to determine Z.R.K.’s eligibility for tribal membership. The remand is limited to this issue. If Phillip cannot establish that Ms. Hillman was not authorized to speak for the Council, then the district court’s findings that
 
 *1298
 
 Z.R.K. is a Native American child under the ICWA and that the consents to termination of parental rights and adoption violated the ICWA are supported by substantial evidence.
 

 CONCLUSION
 

 In this appeal, we come to five conclusions. First, the district court did not lack jurisdiction to consider the Council’s motion to intervene and invalidate the adoption because substantial evidence supports the inference that the submitted ambiguous notice of voluntary dismissal only applied to Tarah. Second, the voluntary dismissal has no force and effect because it was filed after the district court addressed the merits of the case. Third, the affidavit of the Council’s tribal enrollment officer is admissible to establish that Z.R.K. is a Native American child and subject to the ICWA. Fourth, the ICWA provides a Native American tribe with independent standing to challenge a voluntary adoption proceeding, which includes a termination of parental rights, apart from a child’s parents. Fifth, Phillip should have been given an opportunity to rebut the enrollment officer’s affidavit. Accordingly, we reverse the district court’s order vacating the adoption and remand for further proceedings consistent with this opinion.
 

 Rose, C. J., Maupin, Gibbons, Douglas, Hardesty and Parraguirre, JJ., concur.
 

 [1]
 

 The record does not reflect Phillip’s reasons for adopting Z.R.K.
 

 [2]
 

 Because the district court proceeded to address the merits of the Council’s position, we infer that the court granted the motion to intervene.
 

 [3]
 

 NRCP 41(a) permits a plaintiff to voluntarily dismiss an action any time before service by an adverse party of an answer or a motion for summary judgment.
 

 [4]
 

 Because the district court continued the proceedings to permit the Council to present evidence, we infer that the district court found that the dismissal only applied to Tarah.
 

 [5]
 

 We note that it would have been preferable for the district court to have entered a formal order determining that the dismissal applied only to Tarah, and specifically granting the Council’s motion to intervene, rather tihan proceeding directly to the merits of the case.
 

 [6]
 

 Winston Products Co. v. DeBoer,
 
 122 Nev. 517, 523, 134 P.3d 726, 730 (2006) (citing
 
 Nelson v. Heer,
 
 121 Nev. 832, 834, 122 P.3d 1252, 1253 (2005)).
 

 [7]
 

 Harvey Aluminum v. American Cyanamid Co.,
 
 203 F.2d 105, 108 (2d Cir. 1953).
 

 [8]
 

 Id.
 
 at 107-08.
 

 [9]
 

 Id.
 
 at 108.
 

 [10]
 

 See Matter of Appeal in Maricopa County,
 
 667 P.2d 228, 231-32 (Ariz. Ct. App. 1983);
 
 In Interest of A.G.-G.,
 
 899 P.2d 319, 321 (Colo. Ct. App. 1995);
 
 In re Welfare of S.N.R.,
 
 617 N.W.2d 77, 80 (Minn. Ct. App. 2000);
 
 cf. People ex rel. DSS in Interest of C.H.,
 
 510 N.W.2d 119, 123 (S.D. 1993) (“The trial court must initially determine if a child is a[ ] [Native American] child within the meaning of ICWA.”).
 

 [11]
 

 25 U.S.C. § 1903(4) (2000).
 

 [12]
 

 A.G.-G.,
 
 899 P.2d at 321 (“[E]ach [Native American] tribe has the authority to determine its membership criteria and to decide who meets those criteria.”);
 
 In re N.E.G.P.,
 
 626 N.W.2d 921, 924 (Mich. Ct. App. 2001).
 

 [13]
 

 In re S.M.H.,
 
 103 P.3d 976, 981 (Kan. Ct. App. 2005).
 

 [14]
 

 41 Am. Jur. 2d
 
 Indians; Native Americans
 
 § 119, at 667 (2005) (citing
 
 S.N.R.,
 
 617 N.W.2d 77;
 
 In re Dependency of A.L.W.,
 
 32 P.3d 297 (Wash. Ct. App. 2001)).
 

 [15]
 

 A.L.W,
 
 32 P.3d at 301.
 

 [16]
 

 S.N.R.,
 
 617 N.W.2d at 84.
 

 [17]
 

 Id.
 

 [18]
 

 A.G.-G.,
 
 899 P.2d at 321;
 
 Application of Angus,
 
 655 P.2d 208, 212 (Or. Ct. App. 1982).
 

 [19]
 

 Clark County v. Sun State Properties,
 
 119 Nev. 329, 334, 72 P.3d 954, 957 (2003).
 

 [20]
 

 Id.
 

 [21]
 

 Attorney General
 
 v.
 
 Board of Regents,
 
 119 Nev. 148, 153, 67 P.3d 902, 905 (2003).
 

 [22]
 

 Trustees v. Developers Surety,
 
 120 Nev. 56, 61, 84 P.3d 59, 62 (2004).
 

 [23]
 

 Edgington v. Edgington,
 
 119 Nev. 577, 582-83, 80 P.3d 1282, 1286 (2003).
 

 [24]
 

 Harris Assocs. v. Clark County Sch. Dist.,
 
 119 Nev. 638, 642, 81 P.3d 532, 534 (2003).
 

 [25]
 

 Building & Constr. Trades v. Public Works,
 
 108 Nev. 605, 610, 836 P.2d 633, 636 (1992).
 

 [26]
 

 Metz
 
 v.
 
 Metz,
 
 120 Nev. 786, 792, 101 P.3d 779, 783 (2004).
 

 [27]
 

 25 U.S.C. § 1911(c) (2000).
 

 [28]
 

 Id.
 
 § 1903(1)(ii).
 

 [29]
 

 See
 
 NRS 127.160 (natural parent relieved of all parental responsibilities upon entry of order of adoption).
 

 [30]
 

 25 U.S.C. § 1914 (emphases added).
 

 [31]
 

 384 N.W.2d 843, 846 (Mich. Ct. App. 1986).
 

 [32]
 

 Id.
 

 [33]
 

 See id.
 

 [34]
 

 47 F. Supp. 2d 1233 (E.D. Wash. 1999).
 

 [35]
 

 Id.
 
 at 1236.
 

 [36]
 

 Id.
 

 [37]
 

 Id.
 
 at 1237.
 

 [38]
 

 Id.
 
 at 1238.
 

 [39]
 

 Navajo Nation,
 
 47 F. Supp. 2d at 1241.
 

 [40]
 

 Id.
 

 [41]
 

 Id.
 
 at 1241-42.
 

 [42]
 

 See id.
 
 at 1242-43 (holding that 25 U.S.C. § 1914 does not provide for a private cause of action for a violation of § 1915).
 

 [43]
 

 See id.
 
 at 1236.
 

 [44]
 

 We note, however, that a voluntary proceeding that violates § 1913(a) is merely voidable, not automatically void. Because a tribe is not entitled to receive notice of adoption actions, a tribe could, as was the case in
 
 Navajo Nation,
 
 receive information on a violation of the ICWA years after the entry of an adoption order. If a violation of the ICWA automatically voided an adoption, then a challenge made years after the adoption was finalized and untimely under state law might result in a holding that was detrimental to the best interests of the Native American child that the ICWA was designed to protect. Therefore, we conclude that a violation of § 1913(a) results in a voidable order and a district court may consider the timeliness of the challenge in whether to vacate the order.