131 Nev., Advance Opinion 66

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE PARENTAL RIGHTS AS TO A.P.M. AND E.M.M. | No. 64214 |

ARLI P.M.,
Appellant,
vs.
STATE OF NEVADA DEPARTMENT
OF FAMILY SERVICES; AND A.P.M.
AND E.M.M., MINORS,
Respondents.



FILED

SEP 10 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order terminating parental rights. Eighth Judicial District Court, Family Court Division, Clark County; Frank P. Sullivan, Judge.

*Affirmed.*

David M. Schieck, Special Public Defender, and Abira Grigsby, Deputy Special Public Defender, Clark County,
for Appellant.

Steven B. Wolfson, District Attorney, and Janne M. Hanrahan and Ronald L. Cordes, Deputy District Attorneys, Clark County,
for Respondent State of Nevada Department of Family Services.

Legal Aid Center of Southern Nevada and Mary F. McCarthy and Barbara E. Buckley, Las Vegas,
for Respondents A.P.M. and E.M.M.

2/8/16: Corrected per letter to publishers, CJ

15-27323

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, GIBBONS, J.:

In this appeal, we consider two issues of first impression arising from a termination of parental rights. First, we consider whether the district court may terminate the parental rights of a parent who has completed a case plan for reunification. Second, we consider whether the district court must wait the entire 20 months before applying both the presumption of token efforts in NRS 128.109(1)(a) and the presumption that termination of parental rights is in the best interest of the child in NRS 128.109(2).

We first conclude that the district court may terminate the parental rights of a parent who has completed his or her case plan for reunification, if termination is otherwise warranted under NRS 128.105. Second, we conclude that the district court is not required to wait the entire 20 months before applying the presumptions found in NRS 128.109(1)(a) and NRS 128.109(2), as long as the child has been removed from his or her parents' home pursuant to NRS Chapter 432B for at least 14 months during any consecutive 20-month period. Having resolved these legal issues, we further conclude that the record contains substantial evidence supporting the district court's decision to terminate appellant's parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant Arli M. and his wife Abigail M. had three children together: J.M.,[1] A.P.M., and E.M.M. From July 2006 to November 2011, seven separate incidents occurred in which one of the three children swallowed foreign objects, such as coins, magnets, and batteries. All of these swallowing incidents happened while Arli was at work and Abigail was at home with the children. On the latest occasion, doctors had to surgically remove a large battery that was lodged in E.M.M.'s throat. Following E.M.M.'s surgery, the doctors grew concerned that Abigail was forcing her children to swallow foreign objects. The doctors explained that three-year-old E.M.M. swallowing the large battery was the equivalent of an adult swallowing a golf ball, making it highly unlikely that he swallowed it on his own. Due to their concerns, the doctors initiated a child protective services investigation.

In November 2011, the Clark County Department of Family Services (DFS) removed A.P.M. and E.M.M. from their parents' home pursuant to NRS Chapter 432B. In July 2012, the juvenile court entered an order granting DFS legal custody of the children, and the children were placed in foster care. Arli and Abigail were issued case plans containing objectives for them to complete in order to regain custody of their children. Arli's case plan required that he take parenting classes and participate in counseling. Almost immediately, Arli successfully completed the parenting classes and was participating in the required counseling.

_____

[1] J.M. died on October 10, 2006, from undetermined causes.

Despite these efforts, however, the juvenile court reviewed Arli's and Abigail's progress and determined that the children should remain in foster care.

On December 6, 2012, DFS filed a petition in the district court to terminate the parental rights of Arli and Abigail pursuant to NRS Chapter 128. On April 10, 2013, the district court began a five-day evidentiary hearing on the matter. Evidence presented at the hearing showed that Arli took almost no action to ensure the safety of his children after any of the seven swallowing incidents. Throughout the proceedings, Arli testified that he did not believe that Abigail was intentionally making their children swallow foreign objects or improperly supervising them. Instead, Arli claimed that the children's injuries were simply a result of Abigail losing focus while caring for the children.

After the hearing, the district court granted the petition to terminate the parental rights of Arli and Abigail. The district court found that DFS established (1) parental fault by proving neglect,[2] and (2) that

---

[2]During oral argument, both parties agreed that the district court's written order terminating Arli's parental rights contained discrepancies regarding the district court's findings of parental fault on grounds other than neglect. The parties claimed that the written order contained unintentional errors that conflicted with the district court's oral findings. Acknowledging these potential discrepancies, we conclude that the written order is controlling in this case. *See Rust v. Clark Cnty. Sch. Dist.*, 103 Nev. 686, 689, 747 P.2d 1380, 1382 (1987).

It is undisputed, however, that the district court found—both at the hearing and in its written order—parental fault based on neglect under NRS 128.105(2)(b). Because, as described below, we affirm the district court's finding of neglect, and only one parental fault ground is needed to

*continued on next page . . .*

termination of parental rights was in the best interests of the children. The district court's findings regarding parental fault and the children's best interests revolved around the danger posed by Abigail's supervision of the children and Arli's failure to take protective action.

Both parents initially appealed from the district court's order, but this court received a suggestion of death indicating that Abigail had passed away, and her appeal was dismissed. Only Arli's appeal remains. On appeal, Arli argues that (1) the district court should not have terminated his parental rights because he completed his case plan, (2) the district court erred in applying the presumptions in NRS 128.109(1)(a) and NRS 128.109(2), and (3) substantial evidence does not support the district court's findings of parental fault and that termination was in the best interests of the children.

## DISCUSSION

### Standard of review

"A party petitioning to terminate parental rights must establish by clear and convincing evidence that (1) termination is in the child's best interest, and (2) parental fault exists." *In re Parental Rights as to A.J.G.*, 122 Nev. 1418, 1423, 148 P.3d 759, 762 (2006). Termination of parental rights is "an exercise of awesome power." *In re Parental Rights as to N.J.*, 116 Nev. 790, 795, 8 P.3d 126, 129 (2000); *see also Drury v.*

---

*. . . continued*

terminate parental rights under NRS 128.105(2), any possible discrepancies in the district court's written order regarding the other parental fault grounds are inconsequential to this case.

5

*Lang*, 105 Nev. 430, 433, 776 P.2d 843, 845 (1989) (holding that severance of the parent-child relationship is "tantamount to imposition of a civil death penalty"). This court closely scrutinizes whether the district court properly terminated the parental rights at issue. *N.J.*, 116 Nev. at 795, 8 P.3d at 129. We will uphold a district court's order terminating parental rights when it is supported by substantial evidence. *In re Parental Rights as to C.C.A.*, 128 Nev., Adv. Op. 15, 273 P.3d 852, 854 (2012).

This appeal also raises issues of statutory interpretation. "The construction of a statute is a question of law, which this court . . . reviews de novo." *Matter of Petition of Phillip A.C.*, 122 Nev. 1284, 1293, 149 P.3d 51, 57 (2006). Generally, the plain meaning of the words in a statute should be respected. *Id.* Thus, when a statute is clear on its face, this court will not look beyond the plain language to determine legislative intent. *Id.*

Prior to reaching the merits of the parental termination decision, two legal issues must be decided: (1) whether the completion of a case plan for reunification prohibits the district court from terminating parental rights, and (2) whether the presumptions found in NRS 128.109(1)(a) and NRS 128.109(2) can be applied before a full 20 months has elapsed.

*Completing a case plan for reunification does not prohibit the district court from terminating parental rights*

Arli was given a case plan under NRS 128.0155 containing written conditions and obligations imposed with the primary objective of reunifying the family. Arli argues that the district court should not have terminated his parental rights because he completed this case plan. We disagree.

Supreme Court
of
Nevada

(O) 1947A

We hold that a completed case plan does not prohibit the district court from terminating parental rights if termination is otherwise warranted under NRS Chapter 128. NRS 128.105 sets forth grounds for terminating parental rights. Along with requiring a finding of parental fault, the statute also states that "[t]he primary consideration in any proceeding to terminate parental rights must be whether the best interests of the child will be served by the termination." NRS 128.105. Determining a child's best interest requires a consideration of many factors stemming from the "the distinct facts of each case." *N.J.*, 116 Nev. at 800, 8 P.3d at 133; *see also* NRS 128.005(2)(c) ("The continuing needs of a child for proper physical, mental and emotional growth and development are the decisive considerations in proceedings for termination of parental rights."). Nowhere in NRS Chapter 128, however, has the Legislature stated that the district court is required to find that preserving parental rights is in the best interest of the child if the parent has completed his or her assigned case plan. While a completed case plan may be persuasive evidence that termination of parental rights is not in the child's best interest, by no means does it prohibit the district court from considering additional factors and determining otherwise.[3]

Accordingly, we conclude that the district court was not prohibited from terminating Arli's parental rights even though Arli had completed his case plan.

_____

[3]Similarly, nothing in NRS 128.105 prohibits the district court from finding parental fault if a parent has completed his or her case plan.

*The presumptions in NRS 128.109(1)(a) and NRS 128.109(2) do not require that a full 20 months elapse before they apply*

NRS 128.109 sets forth presumptions that apply to findings of parental fault and the best interest of the child when the child has resided outside of the home for an extended period of time. The statute states in relevant part:

> 1. If a child has been placed outside of his or her home pursuant to chapter 432B of NRS, the following provisions must be applied to determine the conduct of the parent:

> (a) If the child has resided outside of his or her home pursuant to that placement for 14 months of any 20 consecutive months, it must be presumed that the parent or parents have demonstrated only token efforts to care for the child as set forth in paragraph (f) of subsection 2 of NRS 128.105.

> . . . .

> 2. If a child has been placed outside of his or her home pursuant to chapter 432B of NRS and has resided outside of his or her home pursuant to that placement for 14 months of any 20 consecutive months, the best interests of the child must be presumed to be served by the termination of parental rights.

NRS 128.109.

The district court applied the presumptions in NRS 128.109(1)(a) and NRS 128.109(2) because the children were removed from Arli's home pursuant to NRS Chapter 432B and had remained out of his home for roughly 17 consecutive months at the time the termination hearing had commenced.

Arli argues that the district court erred in applying these presumptions because the children had been out of their parents' home for

less than 20 months. Arli argues that even though the children had been placed elsewhere for over 14 months, the language in NRS 128.109, "14 months of any 20 consecutive months," requires that the district court wait the entire 20 months before applying the presumptions. We disagree.

Under the statute's plain language, the presumptions apply whenever a child has been removed from his or her parents' home pursuant to NRS Chapter 432B for at least 14 months during any consecutive 20-month period. We hold that if the 14-month threshold has been met in less than 20 months, the district court may apply the presumptions in NRS 128.109(1)(a) and NRS 128.109(2) without waiting for the entire 20 months to elapse. Indeed, waiting the additional time would serve no purpose. For example, in the present case, the district court applied the presumptions because the children had been removed pursuant to NRS Chapter 432B for over 17 consecutive months. Thus, waiting an additional 3 months—to reach a total of 20 months—before applying the presumptions would be unnecessary, because the 14-month threshold had already been satisfied. NRS 128.109(1)(a), (2). Accordingly, because Arli's children had been removed pursuant to NRS Chapter 432B for over 14 consecutive months, we conclude that the district court correctly applied the presumptions in NRS 128.109(1)(a) and NRS 128.109(2).

*Substantial evidence supports termination of Arli's parental rights*

With the two pressing legal issues resolved, we now turn our attention to whether the district court's findings of parental fault and that termination of parental rights was in the children's best interests were supported by substantial evidence. NRS 128.105. We conclude that substantial evidence supports these findings.

*The district court correctly found parental fault based on neglect*

Arli contends that substantial evidence does not support the district court's finding of neglect. Arli argues that he could not be neglectful because he was not present during any of the swallowing incidents. To support this argument, Arli cites *Chapman v. Chapman*, 96 Nev. 290, 294, 607 P.2d 1141, 1144 (1980), in which this court held that "a finding of neglect must be based upon the treatment of the child while the parent has custody" and "neglect is not established when the child is left by the parent in an environment where the child is known to be receiving proper care."[4] In response, DFS argues that Arli was neglectful because he failed to take protective action after the seven serious swallowing incidents involving all three of his children.

We conclude that substantial evidence supports the district court's finding of neglect. NRS 128.014(2) defines a neglected child as a child "[w]hose parent . . . refuses to provide proper or necessary subsistence, education, medical or surgical care, or other care necessary for the child's health, morals or well-being." Testimony during the evidentiary hearing showed that Arli took almost no protective action after repeated swallowing incidents—some of which sent his children to the hospital, with the most recent incident causing serious harm to one child. Arli's failure to take protective action shows that he "refus[ed] to provide proper . . . care necessary for [his children's] health." NRS

---

[4]Arli also argues that DFS attempted to compel Abigail to admit that she abused the children in order to regain custody, which violated her Fifth Amendment right against self-incrimination. Arli does not explain, however, how any alleged violations of Abigail's rights apply to his case.

128.014(2). Further, we conclude that Arli's reliance on *Chapman* is misplaced because although Arli was not present during any of the swallowing incidents, he failed to leave his children "in an environment where [they were] known to be receiving proper care." 96 Nev. at 294, 607 P.2d at 1144. Accordingly, the district court correctly found parental fault based on neglect. NRS 128.105(2)(b).

*The district court correctly found that termination of Arli's parental rights was in the best interests of the children*

As explained above, we concluded that the district court correctly applied the NRS 128.109(2) presumption that termination of parental rights was in the best interests of the children based on the length of their removal. Arli contends, however, that he rebutted the presumption by visiting his children, completing parenting classes, and participating in counseling.

We conclude that substantial evidence supports a finding that Arli did not rebut the presumption that termination of his parental rights was in the best interests of the children. The district court heard extensive testimony from several witnesses, including evidence as to Arli's limited relationship with his children and his failure to take any meaningful protective action after seven serious swallowing incidents, which were increasing in seriousness and harm. The evidence further established that the children did not ingest any foreign objects after they were placed in protective custody. Also, the children's foster parent testified that the children had been living with her for several months, that they had a close relationship, and that she wished to adopt them.

We conclude that the sum of this evidence supports the district court's finding that termination of Arli's parental rights was in the

SUPREME COURT
OF
NEVADA

(O) 1947A

11

best interests of the children. This evidence further establishes that even with the death of Abigail, who was apparently the cause of the swallowing incidents, Arli is unable to protect his children from danger, swallowing, or otherwise.

Accordingly, because substantial evidence supports a finding of parental fault and that termination of parental rights was in the best interests of the children, we affirm the judgment of the district court.

_____, J.
Gibbons

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A

DOUGLAS, J., with whom CHERRY, J., agrees, dissenting:

This termination of parental right's case cries out for remand to the district court for a new hearing as to the best interests of the children in light of their mother's death.

The district court findings regarding parental fault and the children's best interests revolved around the danger posed by the mother, Abigail, and her supervision of the children, as well as their father, Arli's failure to take protective action.

As to Arli, the facts establish he successfully completed his case plan. That is, he successfully completed parenting classes and participated in the required counseling prior to the district court's termination hearing. At the same time of the hearing, both parents participated and both parents initially appealed the district court's order. However, this court received a notice indicating that Abigail passed away and that the appeal was dismissed.

I submit that "terminating parental rights is 'an exercise of awesome power' that is 'tantamount to imposition of a civil death penalty'" and is subject to close scrutiny. *In the Matter of Parental Rights as to A.J.G.*, 122 Nev. 1418, 1423, 148 P.3d 759, 763 (2006) (footnote omitted) (quoting *In the Matter of Parental Rights as to N.J.*, 116 Nev. 790, 795, 8 P.3d 126, 129 (2000) (internal quotations omitted)).

It is my belief that close scrutiny is required due to the death of Abigail and Arli's completion of his case plan. The district court's order to terminate both parents' rights was due primarily to the actions of the deceased mother. As such, this matter should be remanded to the district court for a new hearing as to the children's best interests and Arli's parental rights.

Justice requires more than a mechanical application of the presumptions as to the children's best interests and "token efforts" as related to the care of the children.

_____, J.
Douglas

I concur:

_____, J.
Cherry

SUPREME COURT
OF
NEVADA

(O) 1947A

SAITTA, J., concurring in part and dissenting in part:

Although I otherwise agree with the majority, I write separately to express my concern about whether there was substantial evidence to support the district court's finding of parental fault. The majority opinion and the district court base their decisions on the fact that Arli did not take what could be considered sufficient protective action to prevent the children's mother from forcing them to swallow foreign objects while he was not present. As the majority acknowledges, Arli testified that he did not "believe" that Abigail was intentionally making their children swallow foreign objects or improperly supervising them. Although a close call, I am not convinced that this mistaken belief and subsequent failure to protect, when combined with Arli's successfully completed case plan, amount to substantial evidence that Arli has "refuse[d] to provide proper or necessary subsistence, education, medical or surgical care, or other care necessary for the child's health, morals or well-being." NRS 128.014(2). Therefore, I dissent as to the majority's holding that substantial evidence existed supporting the district court's finding of the parental fault of neglect.

_____, J.
Saitta