IN the INTEREST OF: S.E. and B.E.

No. ED 105382

Missouri Court of Appeals,
Eastern District,
DIVISION FOUR.

FILED: September 12, 2017

ATTORNEY FOR APPELLANT: Jon Althauser, Legal Services of Eastern Missouri, 20 South Church Street, Suite C, Union, MO 63084.

ATTORNEY FOR RESPONDENT: Missouri Department of Social Services, Children's Division, Joel Ellis Anderson, P.O. Box 899, Jefferson City, MO 65102.

ATTORNEY FOR JUVENILES—B.E. AND S.E.: Brice Adam Boren, Guardian Ad Litem, P.O. Box 667, Park Hills, MO 63601.

JUVENILE OFFICER: Tammy Machelle Steward, 1322 St. Genevieve Avenue, P.O. Box 30, Farmington, MO 63640.

## OPINION

Mary K. Hoff, Judge

Nenana Native Village (the "Tribe") appeals from the trial court's Judgment Terminating Parental Rights ("Judgment") which terminated N.W.'s ("Mother") parental rights to her children, S.E. and B.E. (collectively, the "Children"). We affirm.

### Factual and Procedural Background

On June 11, 2015, because Mother was failing to provide a fit and sanitary home, for the Children and failing to address several medical issues from which the Children suffer, the Juvenile Officer of Washington County ("Juvenile Officer") filed a petition against Mother alleging abuse and neglect of the Children. Mother, herself, purportedly suffers from certain medical conditions, which contributed to her inability to care for the Children, and the Children were placed in the protective custody of the Missouri Department of Social Services, Children's Division ("Division"). As Mother and the Children are of Native American or Alaskan heritage, the Indian Child Welfare Act of 1978, 25 U.S.C. Sec. 1901 et seq. ("I.C.W.A.")[1], applied to the proceedings, and on February 23, 2016, in order to comply with a requirement contained therein, the Division sent notice of the proceedings to the Tribe. On March 31, 2016, the Tribe, pursuant to Section 1911(c) of the I.C.W.A., filed a Motion to Intervene, which was granted on April 29, 2016.

On November 14, 2016, the Juvenile Officer filed a Petition for Termination of Parental Rights, alleging that Mother's conduct placed the children in "imminent risk of serious physical or emotional damage" and asked the trial court to find the same beyond a reasonable doubt. Thereafter, Mother discussed with her counsel the option of consenting to the termination, apparently understanding that she was incapable of properly caring for the Children. As a result, and with consent of Mother's counsel, on December 13, 2016, the Deputy Juvenile Officer traveled to Mother's home with counsel for the Children's father ("Father's Counsel") to discuss Mother's consent to the termination and to explain the forms effectuating such consent. While at Mother's home, the Deputy Juvenile Officer explained the forms to Mother, and Mother, upon indicating that she understood them, signed separate documents entitled "Consent to Termination of Parental Rights and Adoption" for both Children.

On December 19, 2016, the trial court held a hearing for the termination of Mother's parental rights at which the Juvenile Officer, Mother, and the Children's father were represented by their respective counsel; Mother, and the Children's father, however, did not themselves appear. Counsel for the Tribe appeared by phone. At the hearing, the Deputy Juvenile Officer testified that the consent forms were read and explained to Mother in English, Mother's primary language. The Deputy Juvenile Officer noted that Mother

1. The I.C.W.A. "was the product of rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." Adoptive Couple v. Baby Girl, —— U.S. ——, 133 S.Ct. 2552, 2557, 186 L.Ed.2d 729 (2013) (quoting Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 32, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989)). It was enacted following Congress' finding that "an alarmingly high percentage of Indian families [were being] broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies." Id. (citing 25 U.S.C. Sec. 1901(4)).

had an opportunity during this time to ask questions and that she did not appear to be under the influence of any drugs or alcohol. The Deputy Juvenile Officer further confirmed that once the explanation of the forms was complete, Mother indicated her understanding and signed the forms, which were notarized by Father's Counsel. Following the Deputy Juvenile Officer's testimony, Mother's consents were then entered into evidence without objection from the Tribe.

Thereafter, Dawn Turnbough ("Turnbough"), a Children's Service Specialist with the Division, testified as to her opinion regarding whether the Children would suffer serious emotional or physical harm if they were to remain with Mother. After testifying as to her qualifications, including her having obtained multiple degrees in social work, her twenty-two years of work experience with the Division, and her continuing education for child welfare practice, the Juvenile Officer sought to certify Turnbough as an expert witness. None of the parties objected, the trial court certified Turnbough as an expert, and Turnbough testified that she believed the Children did face serious emotional or physical harm if they remained with Mother.

Following, the trial court sought the parties' recommendations, and the Juvenile Officer requested the termination of Mother's parental rights. The Tribe, in turn, explained that while it did not object to the termination, it did prefer to see the Children placed with other family members. Mother's counsel then reiterated to the trial court that Mother consented to the termination. Seeing no objection, the trial court found "beyond a reasonable doubt all the allegations pled[, and] order[ed] that the rights of [Mother] be terminated." A written Judgment was entered on January 25, 2017 and provided, in part, that "the Court finds clear, cogent, and convincing evidence that: ... [t]he continued custody of the [Children] by [Mother] is likely to result in serious emotional or physical damage to the [Children]." The Tribe has since filed both a motion to transfer jurisdiction, to which the Juvenile Officer has responded with objections, as well as a motion requesting a hearing regarding the placement of the Children; both motions remain pending. The Tribe now appeals the trial court's Judgment.

## Standard of Review

This Court "will affirm a trial court's judgment terminating parental rights unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." In re J.D.P., 406 S.W.3d 81, 83 (Mo. App. E.D. 2013) (citing In re S.M.H., 160 S.W.3d 355, 362 (Mo. banc 2005)). "As a practical matter, this means the judgment will be reversed only if we are left with the firm belief that the [decision] was wrong." Id. In termination of parental rights cases, the trial court must find by "clear, cogent, and convincing evidence that one or more" statutory grounds for termination exists. In re Adoption of C.M.B.R., 332 S.W.3d 793, 805 (Mo. banc 2011). On review, conflicting evidence is considered "in the light most favorable to the judgment of the trial court." In re C.M.H., 408 S.W.3d 805, 809 (Mo. App. S.D. 2013) (citing In re A.S.W., 137 S.W.3d 448, 452 (Mo. banc 2004)). The Court must then determine "whether termination of parental rights was in the best interest of the child." In Interest of J.P.B., 509 S.W.3d 84, 90 (Mo. banc 2017) (quoting J.A.R. v. D.G.R., 426 S.W.3d 624, 626 (Mo. banc 2014)). While at the "trial level, the standard of proof for this best interest inquiry is a preponderance of the evidence[,] on appeal, the standard of review is abuse of discretion." Id.

## Discussion

The Tribe raises three points on appeal arguing that the termination of Mother's parental rights was improper. First, the Tribe asserts that Mother's consent to the termination was invalid under Section 1913(a)[2] of the I.C.W.A. Second, the Tribe argues that the trial court's findings were insufficient under both Section 211.447 RSMo. 2000[3] and Section 1912 of the I.C.W.A. Third, the Tribe claims that Turnbough was improperly certified as an expert witness under Section 1912(f)[4] of the I.C.W.A. The Tribe argues that, due to these errors, Mother's parental rights were invalidly terminated and that the case should be remanded for additional evidence and more appropriate findings.

■■■ Before we may "consider the merits of this appeal, we must *sua sponte* determine whether we have authority to do so." In re G.G.B., 394 S.W.3d 457, 461-62 (Mo. App. E.D. 2013) (citing City of Portage Des Sioux v. Klaus Lambert, 323 S.W.3d 462, 464 (Mo. App. E.D. 2010)). This is because "an individual who is not a parent in the eyes of the law has no legal interest in the child." In re J.L.G., 399 S.W.3d 48, 51 n.1 (Mo. Ap. S.D. 2013) (citing In re Q.M.B., 85 S.W.3d 654, 662 (Mo. App. W.D. 2002)). Nor may a non-parent "assert parental rights for [the parent]." Id. Since Mother is not a party to this appeal, the issue is whether the Tribe has standing to appeal the trial court's Judgment terminating Mother's parental rights to the Children.

■■■ "A party has no standing to appeal a final judgment[ ] unless he or she is an 'aggrieved' party." In re Q.M.B., 85 S.W.3d at 662; see also Rule 81.01; and Section 512.020. To be considered "aggrieved," "a party seeking appellate relief must have both a legally cognizable interest in the subject matter and a threatened or actual injury from the judgment." In re Q.M.B., 85 S.W.3d at 662. For purposes of Section 512.020, "the judgment in question must 'operate[ ] prejudicially and directly on his personal or property rights or interests.'" Id. (quoting Jackson County Bd. Of Election Comm'rs v. Paluka, 13 S.W.3d 684, 687 (Mo. App. W.D. 2000)).

■■■ The Tribe claims that the underlying policy of the I.W.C.A. serves as basis for the legal interest harmed by trial court's Judgment, thereby rendering it an "aggrieved party," and that Section 1914 gives it standing, independently of Mother, to assert an appeal. Specifically, the Tribe argues that, if the trial court's termination of Mother's rights in her "Indian [C]hildren" was executed without "following the minimum standards [in the] I.C.W.A.," its legally cognizable interest in "preserv[ing]

2. Section 1913(a) provides that a parent's voluntary consent to the termination of parental rights to an "Indian child shall not be valid" unless such consent is:

 executed in writing and recorded before a judge of a court of competent jurisdiction and accompanied by the presiding judge's certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent ... The court shall also certify that [the parent] fully understood the explanation in English or that it was interpreted into a language that the parent ... understood.
 25 U.S.C. Sec. 1913(a).

3. Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

4. Section 1912(f) mandates that, in a termination proceedings subject to the I.C.W.A., "[n]o termination of parental rights may be ordered ... in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent ... is likely to result in serious emotional or physical damage to the child." 25 U.S.C. Sec. 1912(f).

and in protecting the Indian children that are its members" will have been frustrated such that it may validly appeal the Judgment. We agree.

The I.C.W.A. was "promulgated in an effort to counteract the large scale separations of Indian children from their families, tribes, and culture through adoption or foster care placement, generally in non-Indian homes." C.E.H. v. L.M.W., 837 S.W.2d 947, 951 (Mo. App. W.D. 1992) (citing Matter of Adoption of Crews, 118 Wash.2d 561, 825 P.2d 305, 308 (1992)). Motivated by a policy seeking to "protect the best interests of Indian children and [to] promote the stability and security of Indian tribes and families," the I.C.W.A. established minimum federal standards regulating the removal of Native American children from their families and placement into adoptive homes. 25 U.S.C. Sec. 1902. Such standards "govern state-court child custody proceedings involving Indian children," and include, *inter alia*, notice requirements, parental and tribal rights of intervention, and procedures for establishing voluntary consent to termination of parental rights. Adoptive Couple, 133 S.Ct. at 2557; see 25 U.S.C. Sections 1901-1915. Where a state court fails to abide by these standards, a party may "petition for invalidation of [the] illegal proceedings." Holyfield, 490 U.S. at 32, 109 S.Ct. 1597; see 25 U.S.C. Sec. 1914. As reflected in Section 1914:

> "[a]ny Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913" of the I.C.W.A.

25 U.S.C. Sec. 1914. The I.C.W.A., therefore, "establish[es] a federal policy that, where possible, an Indian child shall remain in the Indian community." C.E.H., 837 S.W.2d at 952 (citing Crews, 825 P.2d at 309) (emphasis omitted). "The underlying thread which runs throughout the entire Act is that it is concerned with the removal of Indian children from an existing Indian family unit and the resultant breakup of the Indian family." Id. (emphasis omitted).

Given these concerns, "[t]he numerous prerogatives accorded the tribes through the [I.C.W.A.]'s substantive provisions ... must ... be seen as a means of protecting not only the interests of individual Indian children and families, but also of the tribes themselves." Holyfield, 490 U.S. at 49, 109 S.Ct. 1597. Thus, "to deprive [a tribe] the rights afforded by the [I.C.W.A.] would be a manifest injustice." In re C.G.L., 28 S.W.3d 502, 505 (Mo. Ap. S.D. 2000). Here, since the I.C.W.A. mandates compliance with federal standards that guard Native American tribes' interests in protecting their children, maintaining tribal stability, and keeping Native American families together, the Tribe's interests would be threatened by a judgment that, as alleged here, terminates a familial relationship while skirting those standards. See, e.g., Id. (reversing denial of tribe's motion to intervene in adoption proceeding where tribe established "legal rights to a preference in [child's placement] under" Section 1915(a) which would have been directly impaired if non-preferred adoptive parents were named). The Tribe, which intervened in the trial court, is therefore "aggrieved" by the Judgment such that it has standing to appeal independently of Mother. See, Section 512.020 RSMo. 2000; see also 25 U.S.C. Sec. 1914; Matter of Petition of Phillip A.C., 122 Nev. 1284, 149 P.3d 51, 59 (2006) (holding Native Ameri-

can children, families, and tribes "each have independent standing" under Section 1914 to challenge improper termination or adoption proceeding); and Matter of Kreft, 148 Mich.App. 682, 384 N.W.2d 843, 846 (1986) ("Congress meant that either the child, parent or guardian, *or* the tribe could petition to invalidate the action") (emphasis in original).

Having concluded that the Tribe has the authority to assert this appeal, we turn to the merits of the Tribe's claims.

### Points I and III

 For expediency, we will consider the Tribe's first and third points on appeal together. In its first point, the Tribe argues for the first time on appeal that the trial court erred in terminating Mother's parental rights because Mother's consent was invalid under Section 1913 of the I.C.W.A. Specifically, the Tribe asserts that Mother's absence at the termination hearing prevented the trial court from explaining to her on the record the consequences of her consent and from obtaining Mother's explicit acknowledgement that she understood the ramifications of giving her consent. In its third point, the Tribe claims, also for the first time on appeal, that the termination was invalid because Turnbough was not a properly qualified expert witness under Section 1912(f). Particularly, the Tribe claims that Turnbough lacked knowledge of the prevailing social and cultural standards of the Tribe such

that she could not have been properly certified as an expert.[5] Because the Tribe did not preserve these issues, it requests plain error review.

 We will "review an unpreserved point for plain error only if there are substantial grounds for believing that the trial court committed error that is evident, obvious and clear and where the error resulted in manifest injustice or miscarriage of justice." Mayes v. Saint Luke's Hosp. of Kansas City, 430 S.W.3d 260, 269 (Mo. banc 2014) (quoting In re Adoption of C.M.B.R., 332 S.W.3d at 809) (internal quotations omitted). Even so, "plain errors affecting substantial rights may be considered at this court's discretion," and such review "rarely is granted in civil cases." J.D. v. L.D., 478 S.W.3d 514, 518 (Mo. App. E.D. 2015) (citing Rule 84.13(c)); Clark v. Missouri Lottery Commission, 463 S.W.3d 843, 849 n.11 (Mo. App. W.D. 2015) (quoting Mayes, 430 S.W.3d at 269).

 As to the Tribe's Points I and III, upon our review of the record, and under the circumstances of this case, we do not find that any manifest injustice is present. Despite ample opportunity at the termination hearing to contest the validity of Mother's consent and Turnbough's qualifications under the I.C.W.A., the Tribe at no point objected on either ground. As to Mother's consent, the Deputy Juvenile Officer testified that she and

---

5. The Tribe's argument on this point relies upon 25 C.F.R. Sec. 23.122(a), which provides guidance in interpreting Section 1912(f). Promulgated by the Bureau of Indian Affairs and published as regulations for interpreting the I.C.W.A., Section 23.122 notes that:

> [a] qualified expert must be qualified to testify regarding whether the child's continued custody by the parent ... is likely to result in serious emotional or physical damage to the child and should be qualified to

testify as to the prevailing social and cultural standards of the Indian child's Tribe. 25 C.F.R. Sec. 23.122(a). We note that while "[t]hese guidelines are helpful[, they] are not binding upon state proceedings." C.E.H., 837 S.W.2d at 953 (citing Matter of Adoption of T.R.M., 525 N.E.2d 298, 307 (Ind. 1988)). This is because the "primary responsibility for interpreting language used in the [I.C.W.A.] rests with the courts that decide ... cases [involving Native American children]." Id.

Father's Counsel met with Mother at her home to discuss her intention to consent to the termination of her parental rights (subsequent to Mother's discussing this with her counsel). The consent forms were read and explained to Mother in English, Mother's primary language; Mother indicated that she understood the forms; and Mother signed the forms without coercion from any party. When the Juvenile Officer sought to admit the consent forms, the trial court specifically asked whether any party had "[a]ny objections to [the] Exhibits." Counsel for the Tribe explicitly answered "[a]t this time, no." While the Tribe now claims that Mother's consents were invalid under Section 1913, it objected at no point to raise this issue. In fact, when the trial court sought the parties' recommendations regarding termination, the Tribe noted that its only concern was "just that if [the] [C]hildren have to leave the parents [it] would like to see them stay within the family." The trial court, to clarify, asked, "so you're not recommending against the termination, you're just wanting placement to be considered with someone else versus where they're placed at?" The Tribe answered, "Yes, ma'am— or I'm sorry, Your Honor. Yes."

As to Turnbough's certification as an expert witness, Turnbough explained her credentials, testifying that she is currently employed as a Children's Service Specialist with the Division, with which she has been working in various capacities for twenty-two years, and that she possessed both bachelor's and master's degrees in social work. Further, she provided that in addition to receiving basic training for child welfare practice through the Division, she maintains between sixteen and twenty-four hours per year of continuing education for child welfare practice. When the Division sought to certify Turnbough as an expert, the trial court specifically asked counsel for the Tribe, "[a]ny objections, ma'am?"

The Tribe's counsel responded "No." The trial court then qualified Turnbough as an expert who, in turn, explained that continued custody with Mother could likely result in serious emotional or physical damage to the Children. While the Tribe now claims that Turnbough was not qualified to be an expert under Section 1912(f), the Tribe at no point objected either to Turnbough's qualifications as an expert or her testimony.

■ "Plain error is not a doctrine available to revive issues already abandoned ... by oversight." In re S.R.J., Jr., 250 S.W.3d 402, 405 n.2 (Mo. App. E.D. 2008) (citing State ex rel. Missouri Highway and Transp. Com'n v. Muegge, 842 S.W.2d 192, 197 (Mo. App. E.D. 1992)). Here, the trial court provided the Tribe with several opportunities to raise either issue now complained of by specifically asking whether the parties had any objections. In each instance, the Tribe "affirmatively asserted to the trial court that [it] had no objection[, thereby] waiv[ing] appellate review." In re Marriage of Witt, 487 S.W.3d 519, 524 (Mo. App. S.D. 2016) (citing Citizens for Ground Water Prot. v. Porter, 275 S.W.3d 329, 344 (Mo. App. S.D. 2008)). Absent manifest injustice, plain error review is inappropriate for these issues, and we decline to consider the Tribe's claims, particularly where the Tribe's motions for transfer of jurisdiction and for a hearing regarding the placement of the Children remain pending. Resolution of these motions will affect the Tribe's legal rights, possibly alleviating the claimed frustrations of its interests through the placement of the Children in a home approved by the Tribe. Points I and III are therefore denied.

### Point II

In its second point on appeal, the Tribe argues that the trial court erred in termi-

nating Mother's parental rights because its findings were insufficient under Section 211.447 and Section 1912 of the I.C.W.A. Particularly, the Tribe claims that the trial court's finding that "continued custody of the [Children] by [Mother] is likely to result in serious emotional or physical damage to the [Children]" is not sufficiently specific to justify the termination under Section 211.447 because it does not detail the particular grounds upon which the trial court relied to make such a finding. Moreover, the Tribe asserts that this finding was insufficient to justify the termination under the I.C.W.A. because it was made only by clear, cogent, and convincing evidence in the written Judgment rather than beyond a reasonable doubt as mandated by Section 1912. As the Tribe also failed to preserve this issue, it again requests plain error review.

■■■ As to the Tribe's second point, we find no manifest injustice upon our review of the record. Rule 78.07(c) provides that "[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." Rule 78.07(c). Under Rule 78.04, such a motion "shall be filed not later than thirty days after the entry of judgment." Rule 78.04. The Tribe claims that it suffered a manifest injustice in that, while the Judgment was entered on January 25, 2017, such that a motion to amend the Judgment would be

due on February 24, 2017, it did not receive eNotices of the entry until March 3, 2017 and therefore, it "did not have the opportunity to file an after trial motion." See Rule 78.04.[6] This argument, however, disregards the clear mandate of Rule 78.04 that such a motion must be filed within "thirty days after the entry of *judgment*." Rule 78.04 (emphasis added). The record and docket sheets clearly reflected the date of the Judgment's entry as January 25, 2017, and no argument is presented regarding why the thirty-day time limit of Rule 78.04 does not apply here.

Moreover, this is a case where adherence to Rule 78.07(c) would likely have "avoid[ed] the delay, expense, and hardship of an appeal." Brown v. Brown, 423 S.W.3d 784, 787 (Mo. banc 2014) (quoting Pollard v. Whitener, 965 S.W.2d 281, 288 (Mo. App. W.D. 1998)). While the written Judgment found the likelihood of damage to the Children only by clear, cogent, and convincing evidence, the trial court explicitly stated at the termination hearing that it was finding *"beyond a reasonable doubt* all the allegations pled," including the finding with which the Tribe now takes issue. Had the Tribe filed a Rule 78.07(c) motion, the trial court would have had the opportunity to more expediently consider the Tribe's concern regarding the applicable standard of proof, clarify the standard by which it made the relevant finding, and address the Tribe's issues with the Judgment. Since the Tribe failed to file such a

**6.**—Appellant raises the notice issue for the first time in its reply brief by attaching copies of e-notices to its brief. This is not a proper way to supplement the record and so we must disregard the attachments. *Strycharz v. Barlow*, 904 S.W.2d 419, 426 (Mo. App. E.D. 1995). However, if this claim is correct, we do not condone a delay of over five weeks in the clerk sending notice of the entry of Judgment. But Supreme Court Rule 74.03 provides a remedy for an affected party in these circum-

stances. The rule provides that if immediate notice of the entry of an order or judgment is not given, the order or judgment shall be set aside upon written motion within six months for good cause shown. Here, if immediate notice of the entry of the January 25, 2017 Judgment had not been given and a 74.03 motion had been filed, the Judgment could have been set aside, re-entered and appellant could have timely filed a timely post-judgment motion preserving this issue for appeal.

motion and did not object to the termination of Mother's parental rights at the trial court hearing, we find no manifest injustice, and plain error review would, therefore, be inappropriate. Point II is denied.

### Conclusion

The Judgment is affirmed.

Colleen Dolan, Presiding Judge and Lisa S. Van Amburg, Judge, concur.

